11 STEWART, Judge.
Appellant, James Walter Justice (“Jamie”) appeals the judgment of the trial court declaring his grandmother’s 1978 will invalid and dismissing his petition to probate a copy of that will. We affirm the decision of the trial court.

FACTS

On November 16, 1978, James Winfred Justice, Sr. (“Mr. Justice”) and Bessie Louise Manning Justice (“Mrs. Justice”) each executed a statutory will drafted by their attorney, Mike Coyle. In her testament, Mrs. Justice left her community property to her husband, divided her separate property equally between her son, James Winfred Justice, Jr. (“James”) and her grandson, Jamie, with Jamie’s interest subject to a testamentary trust set forth in the will, and made specific bequests of jewelry to Jamie. Mr. Coyle gave the originals to Mrs. Justice and kept copies in his office.
On September 21, 1990, Mrs. Justice executed a second instrument before a notary on a printed form prepared for execution in other states and which contained printed language providing for revocation of “any and *599 all other Wills and Codicils heretofore made” by the testator. The 1990 instrument purporting to be Mrs. Justice’s will increased the legacy to Jamie to include all of her separate property thereby excluding James, altogether. In a prior judgment, the trial court found the 1990 instrument to be invalid as to form and, therefore, a nullity.
Jamie obtained a copy of the 1978 will, which Mr. Coyle had retained in his files, and filed a petition to probate the copy of the 1978 will. The evidence and testimony adduced at trial established that the original of Mrs. Justice’s 1978 will was missing from the family safe and that the 1990 instrument had been placed in the safe in the same envelope with Mr. Justice’s 1978 will. Mr. Justice testified that he did not remove Mrs. Justice’s 1978 will from the safe and that, other than himself, only Mrs. Justice had access to the safe. Her 1978 will was not found in any of Mrs. Justice’s other possessions.
The testimony of several witnesses at trial revealed that Mrs. Justice continued until the time of her death to believe that she would not die intestate and that through the ^dispositions in her will she had provided for Jamie. Mr. Justice also confirmed this testimony.
Following the trial, the court ruled the 1978 will invalid and dismissed the probate of that instrument. The court concluded that the revoking language in Mrs. Justice’s invalid 1990 will coupled with the disappearance of the original 1978 will operated to revoke the 1978 will.
Jamie now appeals that ruling of the trial court contending that the court erred in finding that his grandmother revoked her 1978 will.

LAW

It is well established that an appellate court may not set aside a factual finding absent manifest error or unless the trial court was clearly wrong. Lewis v. State through DOTD, 94-2370 (La. 4/21/95), 654 So.2d 311; Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
When a will, shown to have been in the possession of or accessible to the deceased, cannot be found at the testator’s death a presumption arises that the testator has destroyed the will with intent to revoke the prior testament. The party seeking to establish the will may rebut the presumption by clear proof of the following: (1) the testator made a valid will; (2) proof of the contents or substance of the will; (3) the will, though not found at testator’s death, was never revoked by the testator. Succession of Talbot, 530 So.2d 1132 (La.1988); Succession of Nunley, 69 So.2d 33 (La.1953); Hamilton v. Kelley, 641 So.2d 981 (La.App. 2d Cir.1994).
The copy of the 1978 will obtained, from Mr. Coyle’s files provided proof of the only valid will executed by Mrs. Justice and the contents of that will. The issue presented to this court is whether, at trial, sufficient evidence demonstrated that no revocation of the 1978 will as permitted under Louisiana law was executed by Mrs. Justice prior to her death.
The proponent of a will bears the burden of establishing that the testator, “who intentionally destroyed a copy of his will under circumstances consistent with his having 13an aim to revoke” either did not authorize or commit the destruction of the testament or did not intend to revoke the will by destroying it. Succession , of Talbot, supra, at 1135.
La.C.C. article 1691 provides methods of revoking a testament. When the testator formally declares an intent to revoke in a writing which would be valid as a testament pursuant to Louisiana law, the testator has expressly revoked his will. La.C.C. article 1692. A testator may tacitly revoke by “some other disposition of the testator,” (such as a subsequent incompatible testamentary disposition or the sale or donation of the object of a particular legacy) or “from some act which supposes a change of will.” La.C.C. article 1691. Although no specific reference to destruction of a will is made by that article, the general language of the phrase “from some act which supposes a change of will” would encompass the testator’s destruction of the will as a tacit revocation.
*600 Any act of the testator which indicates a change of will would be a tacit revocation provided the intent to revoke is “fairly and legally” evident from such act. Succession of Nunley, supra. While the act of destruction is the first fact essential to prove a tacit revocation by destruction, the court, in that case, emphasized the importance of reviewing additional evidence, if available, of the testator’s withdrawal of the testamentary intent memorialized in the prior formal act.

DISCUSSION

After thorough review and careful consideration of the record, we cannot say that the trial court was clearly -wrong in finding a tacit revocation of the 1978 will.
The presumption of revocation raised by the missing will was further supported by evidence that Mrs. Justice had access to the family safe and that the 1990 instrument was placed in the safe in the envelope with Mr. Justice’s 1978 will. Those facts strongly suggest that Mrs. Justice removed her 1978 will from the safe and destroyed it. Although the trial court properly found the 1990 testament was not an express revocation pursuant to La.C.C. article 1962 because that instrument did not meet the formalities required by Louisiana law, the revocation language in that document was additional evidence that Mrs. Justice tacitly revoked her 1978 will. Under Succession of Talbot, these | circumstances seem consistent with Mrs. Justice “having an aim to revoke” and support a finding that she did in fact destroy the 1978 will.
We do not find that Jamie has met his burden of clearly proving that the 1978 will was never revoked by Mrs. Justice. Although the testimony, particularly that of Mrs. Gillum, indicated that Mrs. Justice continued to believe that she had provided for Jamie, and although the evidence indicated that the testamentary intent expressed in the 1978 will was not changed by the invalid 1990 instrument, the totality of record establishes that Mrs. Justice tacitly revoked her 1978 testament by destroying it and replacing it with another instrument, albeit an invalid one.
Based on the evidence presented, we find that this case is distinguishable from Armorer v. Case, 9 La.Ann. 288 (1854), and do not conclude that Mrs. Justice’s intent to revoke her 1978 will arose through any mistake or error because her testamentary intent apparently did change in that Mrs. Justice left no legacy to her son in the 1990 instrument.

CONCLUSION

For the reasons assigned above, the judgment of the trial court is affirmed. Costs of this proceeding are assessed to appellant.
AFFIRMED.
CARAWAY, J., dissents with written reasons.