747 So.2d 204 (1999)
SUCCESSION OF George V. LeGARDEUR.
No. 99-CA-699.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 1999.
Rehearing Denied December 20, 1999.
*205 Charles B. Johnson, James J. Coleman, Sr., New Orleans, LA, Jay C. Zainey, Metairie, LA, for Plaintiff-Appellant.
Sidney L. Shushan, Jonathan M. Shushan, New Orleans, LA, William W. Hall, Metairie, LA, for Defendant-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and SUSAN M. CHEHARDY.
DUFRESNE, Judge.
This is an appeal by Wendy LeGardeur, the proponent of a 1992 testament of her deceased father-in-law, George V. LeGardeur, from a judgment declaring that instrument to have been revoked by destruction and upholding the validity of a still extant 1981 will. For the following reasons we affirm the determination that the 1992 will was revoked. However, we reverse the determination that the 1981 will is valid, and instead rule that all testaments at issue here were revoked and that this is now to be treated as an intestate succession in further proceedings.
George V. LeGardeur had two sons: George, Jr. and Armand. At the time of his death, his wife was deceased, as was his son George, Jr. George, Jr. had several children, one of whom, Shelly LeGardeur Kellum, opposed probate of the 1992 will and is the appellee here. Armand is married to Wendy LeGardeur, who was named executrix in the 1992 will, and is the appellant here. The following facts are not in dispute. George LeGardeur, decedent, prepared six testaments during his lifetime, all in statutory will form. Each of these instruments contained a clause revoking all prior testaments. The first two, executed in 1980 and 1981, divided the estate between the two sons with a usufruct in favor of the surviving spouse. Then, in 1988, after the death of his wife and son George, Jr., a third will left the forced portion of George, Jr. to his children and the remainder of the estate to Armand, with small bequest to his various grandchildren and great grandchildren. A fourth will, of 1990, left one fourth of the estate to George, Jr.'s children and the remainder of the estate to Wendy LeGardeur, Armand's wife, again with the small legacies. The fifth will, of 1992, left the entire estate to Wendy LeGardeur, but continued the small legacies. The final will, of 1994, left the children of George, Jr. his forced portion and the remainder of the estate to Wendy LeGardeur, still with the small legacies. In the 1990, 1992 and 1994 wills Wendy LeGardeur was named executrix.
Upon decedent's death in 1995, the executrix offered the 1994 will for probate, but subsequent opposition by Shelly LeGardeur Kellum resulted in this testament being declared invalid due to defects as to formalities. That determination is final and is not contested here. The executrix then brought forth a copy of the 1992 will for probate, and this testament was also opposed. On trial of the matter, it was stipulated that:
*206 1) The original of the 1994 will and copies of the 1992, 1990, and 1988, wills were found together in decedent's papers;
2) The originals of the 1992, 1990, and 1988, wills were known to have been in decedent's possession prior to his death, but they have never been found;
3) The originals of the 1980 and 1981 wills were in the possession of decedent's attorney and have been produced; and
4) Except for the 1994 will, all previous wills were in proper statutory form and valid until revoked.
Armand LeGardeur testified in deposition and at trial that he had assisted his father in preparing the 1988 through 1994 wills and gave the following explanation of their various contents. He said that after his brother George, Jr.'s death he and his father had become closer and his father apparently decided to favor him in his will. Because of the Louisiana forced heirship laws, the 1988 will basically left George, Jr.'s forced portion to his children and the remainder of the estate to Armand. It appears that because of financial considerations, Armand advised his father to execute the 1990 will basically substituting Wendy, Armand's wife, for Armand. Then in 1992, when the forced heirship laws had apparently been repealed, Armand advised his father to execute the 1992 will which left almost the entire estate to Wendy. Finally, in 1994, at a time when the forced heirship laws had been revived, Armand advised his father to reinstate the forced portion of George, Jr.'s children, and he obviously agreed to do so.
On the above stipulations and testimony, the trial judge determined that the 1992 will, as well as the 1988 and 1990 wills, had been tacitly revoked and thus could not be probated. She reasoned that because the originals of these wills were known to have been in the testator's possession prior to his death and were now missing there arose a presumption that they had been destroyed by the testator. She also noted that the recitation in the 1994 will that all previous testaments were revoked, although admittedly not appearing in a valid testament, nonetheless constituted additional evidence that the testator intended to revoke the missing wills. She also determined that the 1981 will, the original of which had been kept by the attorney who prepared it, was still a valid will, and stated that upon presentation she would probate that instrument. Wendy LeGardeur now appeals that judgment.
Because the issues in this appeal are factual ones, the standard of appellate review of the matter is whether the factual findings made by the trier of fact are manifestly erroneous, Succession of Justice, 28,363 (La.App. 2nd Cir. 8/23/96), 679 So.2d 597. Under that standard, the inquiry in not whether this court, had it been sitting as the trier of fact, would have made the same findings, but rather whether the findings made in the trial court are reasonable in light of the entire record of the case, Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
The codal articles applicable here are prior La. Civ.Code, Arts. 1691 and 1692 (now 1607 et seq.) which state pertinently:
Art. 1691. The revocation of testaments by the act of the testator is express or tacit, general or particular.
It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition. It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will....
Art. 1692. The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities.
Because it is stipulated that the 1988 will complies with all of the forms of a statutory will, the revocation clause in that document constituted a formal revocation of the 1981 will as per Art. 1692. Similarly, the 1990 will, also correct as to form, revoked *207 the 1988 will, and the 1992 will, also correct as to form, revoked the 1990 will.
Because the 1994 will has been ruled defective, the only document left which could possibly constitute a valid testament is the 1992 will. As noted above, the 1994 will was invalid as to formalities, and that document cannot constitute a formal revocation of the 1992 will under La. Civ.Code, Art. 1692. The only issue remaining is thus whether there was a tacit revocation of that will.
The jurisprudence has been uniform that destruction of a testament by the testator, although not a means of tacit revocation specified in the Civil Code, is nonetheless the most effective means of such a revocation, see Succession of Talbot, 530 So.2d 1132 (La.1988) and cases cited therein. In Talbot the court also reiterated the rule as to missing wills as follows:
Further, this court has adopted the uniformly adhered to rule that the failure to find a will which was executed and in possession of, or readily accessible to, the testator, gives rise to a legal presumption of revocation by destruction; however, this presumption is a rebuttable one and so may be overcome by sufficient evidence. (Id. at 1134-35)
It has also been held that a will destroyed in reliance on the validity of a new will is not revived upon a later determination that the new will is defective, Smith v. Shaw, 221 La. 896, 60 So.2d 865 (1952). Also, in Succession of Justice, supra, the court found the revocation clause in a later, but invalid, will to be admissible nonetheless as evidence of the testator's intent to revoke a prior will.
In the present case, there was testimony by Armand that his father had the original of the 1992 will in his possession while alive and that it was not to be found in his papers after his death. He further testified that he had discussed the changes in the forced heirship laws with his father subsequent to the making of the 1992 will, and that his father had then decided to replace it with the 1994 will. This testimony, coupled with the recitation in the 1994 document that all prior wills are revoked, establishes as more probable than not the testator's intent to revoke the 1992 will, even without reference to the presumption of revocation by destruction raised by the missing 1992 will. When that factor is added to the analysis, it is manifest that the proponents of the 1992 will did not present evidence sufficient to overcome the presumption of revocation. In these circumstances, the determination by the trial judge that the 1992 will was revoked is more than reasonable on the entire record of this case, and we are thus precluded from setting aside that determination, Stobart v. State, Through DOTD, supra.
For the foregoing reasons, the judgment of the trial court holding that the 1992, 1990, and 1988 wills had been revoked by the testator is affirmed. That portion of the judgment holding that the 1981 will remains valid is reversed. Because there is no valid will extant in this case, the succession is one in intestacy. The matter is hereby remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.