PARRO, J.
2The testator’s surviving spouse appeals a judgment pertaining to findings of the invalidity of a testament and the revocation of another testament, both of which had been executed by her husband. The testator’s children answered the appeal, seeking reversal of the portion of the judgment that voided and recalled letters of independent administration which been issued to them. For the following reasons, we affirm.

Facts and Procedural Background

On November 27, 2007, Gerald Hendricks (Gerald) died, leaving a notarial testament dated July 31, 2006. At the time of his death, Gerald was married to Melinda Hendricks (Melinda), and, in addition to Melinda, his three sisters were named as legatees in the 2006 testament. In January 2008, Melinda filed a petition to probate Gerald’s testament and for appointment as the testamentary executrix. Melinda was appointed as executrix, and letters testamentary were issued to her on January 29, 2008. Shortly thereafter, Gerald’s three surviving children from a former relationship — Donnie Franklin, Jamie Franklin, and Sherall Franklin (collectively, the Franklins) — filed a rule to show cause why Gerald’s notarial testament should not be declared null and void pursuant to LSA-C.C. art. 1573, because one of the pages of the testament had not been signed by Gerald as required by LSA-C.C. art. 1577. Following a March 14, 2008 hearing, the court orally ruled that Gerald’s 2006 testament was null and void ab initio, and Melinda was removed as executrix.
On March 18, 2008, the Franklins filed a pleading to have Gerald’s succession declared to be intestate and for the appointment of themselves as independent administrators. The next day, Melinda filed an opposition to the appointment of independent administrators, as well as a petition to file a testament by Gerald dated August 27, 1993, and for the appointment as testamentary executrix.[1] The Franklins |sopposed Melinda’s petition, seeking to have the 1993 testament invalidated pursuant to LSA-C.C. art. 1607. Additionally, upon discovery that two of the legatees *1059 named in the 2006 testament had not been properly served, the Franklins requested that those legatees be ordered to show cause why the 2006 testament should not be declared null and void due to Gerald’s failure to follow certain codal requirements. A hearing was held on all of those matters on May 15, 2008.
In a May 27, 2008 judgment, the trial court (1) declared Gerald’s 2006 testament to be null and void ab initio; (2) voided and recalled the letters testamentary issued to Melinda on January 29, 2008; (3) declared Gerald’s 1993 testament to have been revoked by an authentic act, ie., the annulled 2006 testament; (4) recalled the letters testamentary issued to Melinda on April 25, 2008; (5) recalled the letters of independent administration issued on April 3, 2008, in favor of the Franklins; and (6) declared that Gerald’s succession was intestate.[2] The judgment further provided that any future appointment of an administrator be made by a rule to show cause. Melinda appealed, challenging the trial court’s determination of the invalidity of the 2006 testament and the revocation of the 1993 testament. In an answer to the appeal, the Franklins sought the reversal of that portion of the judgment that voided and recalled the letters of independent administration issued to them.

Validity of the 2006 Testament

Melinda urges that the trial court improperly declared the 2006 notarial testament to be null and void. A disposition mortis causa may be made only in the form of a testament authorized by law. LSA-C.C. art. 1570. The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. LSA-C.C. art. 1573.[3] A notarial testament is one that is executed in accordance with the |4formalities of Articles 1577 through 1580.1. LSA-C.C. art. 1576.[4] A notarial testament may be made in one of several ways, but the 2006 notarial testament was subject to the formalities of Article 1577, which provides:[5]
The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: “In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this *1060 _ day of_ [Emphasis added.]
Article 1577 provides that this form of a notarial testament “shall be executed” in a certain manner. The word “shall” is mandatory. LSA-R.S. 1:3; Succession of Brown, 458 So.2d 140, 142 (La.App. 1st Cir.1984). To properly execute this form of a notarial testament, the following actions must be taken: (1) in the presence of a notary and two competent witnesses, the testator shall declare that the instrument is his testament; (2) in the presence of a notary and two competent witnesses, the testator shall sign his name at the end of the testament and on each other separate page of the testament; and (3) in the presence of the testator and each other, the notary and the witnesses shall sign the declaration set forth in Article 1577, or one substantially similar. See LSA-C.C. art. 1577. Comment (b) of the 1997 revision comments to LSA-C.C. art. 1577 clarifies that the testator need not sign after both the dispositive or appointive provisions of the notarial testament and the declaration. If the testator is disposing of property, appointing an executor, or making other directions in the body of the |5testament itself, he need only sign at the end of the dispositive, appointive, or directive provisions. LSA-C.C. art. 1577, Revision Comments — 1997, comment (b).
The intention of the testator as expressed in the testament must govern. However, the intent to make a testament, although clearly stated or proved, will be ineffectual unless the execution thereof complies with codal requirements. See Succession of Roussel, 373 So.2d 155, 157 (La.1979). A material deviation from the manner of execution prescribed by the code will be fatal to the validity of the testament. Id.; see LSA-C.C. art. 1573. The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the codal requirements, even to bring about justice in the particular instance, since any material relaxation of the codal rule will open up a fruitful field for fraud, substitution, and imposition. Succession of Roussel, 373 So.2d at 157. The purpose of the codal article in prescribing formalities for the execution of testaments is to guard against and prevent mistake, imposition, undue influence, fraud, or deception, to afford means of determining their authenticity, and to prevent the substitution of some other writing. Id. at 158. Thus, the law precludes additional evidence on the issue of intent when the testament was not confected in accordance with LSA-C.C. art. 1577. Succession of Richardson, 05-0552 (La.App. 1st Cir.3/24/06), 934 So.2d 749, 752, writ denied, 06-0896 (La.6/2/06), 929 So.2d 1265. If there is any area of our civil law in which the goal of certainty of result has particular significance, it is that of successions. Id. at 752 (Gaidry, J., concurring).
It is undisputed that Gerald did not sign one of the pages of the 2006 testament that contained dispositive provisions in favor of his three sisters. Thus, Gerald did not comply with one of the formalities of LSA-C.C. art. 1577(1) in that he did not sign on each other separate page of the testament. If the formalities prescribed for the execution of a testament are not observed, the testament is absolutely null. See LSA-C.C. art. 1573. In light of Gerald’s failure to comply with one of the formalities of LSA-jC.C.(; art. 1577(1), we are unable to find legal error in the trial court’s determination that the 2006 testament is absolutely null in its entirety. Although we (like the trial court) find this to be a harsh result under the circumstances of this case, we are bound to follow the law. We were unable to find any codal or jurisprudential authority to support a finding that only the unsigned page containing dispositive provisions should be declared *1061 null as suggested by Melinda. See Evans v. Evans, 410 So.2d 729 (La.1982);[6] Succession of Roussel, 373 So.2d 155;[7] Succession of Hoyt, 303 So.2d 189 (La.App. 1st Cir.1974);[8] Land v. Succession of Newsom, 193 So.2d 411 (La.App. 2nd Cir. 1967), writ denied, 250 La. 262, 195 So.2d 145 (1967).[9] Cf. In re Succession of Simonson, 07-742 (La.App. 5th Cir.3/11/08), 982 So.2d 143.[10]
|7The fact that the testator in this case failed to sign a page of the testament containing dispositive provisions makes this case distinguishable from Succession of Guezuraga, 512 So.2d 366, 368 (La. 1987), in which the supreme court discussed the formal requirements of a statutory will. See former LSA-R.S. 9:2442 to 2445. The issue in Succession of Guezura-ga was whether a'statutory will was valid *1062 if the testatrix signed the page containing all dispositive portions and the beginning of the attestation clause, but failed to sign the page containing only the conclusion of the attestation clause. Succession of Guezuraga, 512 So.2d at 366. In the will, the testatrix left the forced portion of her estate to her two adoptive children and the disposable portion to her four sisters. Over the objection of the testatrix’s adoptive children, the trial court ordered the will probated. Relying on Succession of Hoyt, 303 So.2d 189, and Land, 193 So.2d 411, the fourth circuit reversed, holding that the failure of the testatrix to sign each sheet was fatal to the validity of the will. Succession of Guezuraga, 503 So.2d 187, 188 (La.App. 4th Cir.1987).
Based on the fact that the testatrix in Succession of Guezuraga had signed on the page containing all of the dispositive portions, the supreme court found that Hoyt and Land were distinguishable and reversed the appellate court’s holding that the will was not valid. Succession of Guezuraga, 512 So.2d at 367. The supreme court observed that former LSA-R.S. 9:2442(B)(1) required that the testator declare to the notary and witnesses that the “instrument” was his last “will” and to sign his name at the end of the “will” and on each separate page of the “instrument.” After finding that the legislature intended to use the terms “will” and “instrument” interchangeably and that the reference in each instance was only to the entirety of the testator’s dispositions or recitations, the supreme court concluded that the testatrix had fulfilled the statutory requirement to sign her name at the end of the “will” and on each separate page of the | ¿‘instrument” by signing the page that contained all of the dispositive provisions.[11] Succession of Guezuraga, 512 So.2d at 367-68.
In Succession of Guezuraga, the supreme court declined to interpret the terms “will” and “instrument” as strictly as the forced heirs requested, stating:
But we are not required to give the statutory will a strict interpretation. The Legislature adopted the statutory will from the common law in order to avoid the rigid formal requirements of the Louisiana Civil Code. “The minimal formal requirements of the statutory will are only designed to provide a simplified means for a testator to express his testamentary intent and to assure, through his signification and his signing in the presence of a notary and two witnesses, that the instrument was intended to be his last will.” In accordance with this legislative intent, courts liberally construe and apply the statute, maintaining the validity of the will if at all possible, as long as it is in substantial compliance with the statute. In deciding what constitutes substantial compliance, the courts look to the purpose of the formal requirements — to guard against fraud.
Where the departure from form has nothing whatsoever to do with fraud, ordinary common sense dictates that such departure should not produce nullity. It was the intent of the legislature to reduce form to the minimum necessary to prevent fraud. It is submitted that in keeping with this intent, slight departures from form should be viewed in the light of their probable cause. If they indicate an increased likelihood that fraud may *1063 have been perpetrated they would be considered substantial and thus a cause to nullify the will. If not, they should be disregarded. Thus testators and estate planners will have the security that the legislature intended to give them.
Succession of Guezuraga, 512 So.2d at 368 (citations omitted). On rehearing, the supreme court observed that the attestation clause is a certifícate to a will and not part of the will itself. Therefore, the supreme court reaffirmed its holding that the testatrix’s failure to sign the page containing only the conclusion of the attestation clause was not fatal to the validity of the statutory will.[12] Succession of Guezuraga, 512 So.2d at 370 (on reh’g).
With respect to the dispositive provisions, the court in its original opinion in Succession of Guezuraga set forth the following, in pertinent part:
The dispositive provisions of the testament are what primarily concern the testator, and as to which we require the testator’s affirmance by a signature.... This is our assurance that the testament is an accurate reflection of the testator’s wishes. So long as the signature is located beneath the dispositive provisions and affixed in time after they are written, we are permitted to infer the testator’s approval.... [B]arring other problems with a disposition, it is valid if it appears above the signature of the testator. ...
Succession of Guezuraga, 512 So.2d at 369, quoting H. Alston Johnson, Successions and Donations, 43 La.L.Rev. 585, 595-96 (1982). Although Evans was not mentioned in Succession of Guezuraga, the court’s reference to dispositive provisions seems to be consistent with, and does not reflect an intent to stray from, the holding in Evans.[13]

Validity of the 1993 Testament

Melinda next asserts that the trial court improperly declared Gerald’s 1993 statutory testament null and void because it was revoked by the 2006 testament. Relying on Succession of Feitel, 187 La. 596, 175 So. 72 (1937),[14] Melinda argues that if a testament containing a clause revoking all prior testaments of the testator is annulled, the revoking clause loses its effect and the last preceding testament stands unrevoked. The genesis of this argument is based on former LSA-C.C. art. 1692, which read:
The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities.
In dicta on rehearing, the supreme court in Succession of Feitel agreed that, under former LSA-C.C. art. 1692, an express revocation of a testament, to have effect, must be made in one of the forms pre *1064 scribed for testaments and be clothed with the same formalities. Otherwise, the testament is invalid and the revoking clause could not | ^constitute a formal revocation of a previously executed testament. Succession of Feitel, 175 So. at 80 (on reh’g); see In re Succession of Legardeur, 99-699 (La.App. 5th Cir.11/30/99), 747 So.2d 204, 206-07, writ denied, 00-0124 (La.3/24/00), 758 So.2d 150.
However, Articles 1570 to 1723 of Chapter 6, “Of Dispositions Mortis Causa (In Prospect of Death),” Title II, Book III, of the Louisiana Civil Code of 1870, were revised, amended, and re-enacted by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999, to consist of Articles 1570 to 1616. As a result of these revisions, a testator’s revocation of a testament is now governed by LSA-C.C. art. 1607, which provides:
Revocation of an entire testament occurs when the testator does any of the following:
(1) Physically destroys the testament, or has it destroyed at his direction.
(2) So declares in one of the forms prescribed for testaments or in an authentic act.
(3) Identifies and clearly revokes the testament by a writing that is entirely written and signed by the testator in his own handwriting.
The testator’s ability to revoke a prior testament was expanded by adding the use of an authentic act to do so. See LSA-C.C. art. 1607 and Revision Comments— 1997. In 2006, an entire testament could be revoked by an authentic act in which the testator declared his testament revoked. An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. LSA-C.C. art. 1833(A). Thus, the fact that the document executed by Gerald in 2006 is not a valid testament does not preclude the document from constituting an authentic act, and the parties do not dispute that the 2006 document complies with the requirements of LSA-C.C. art. 1833(A). In the 2006 document, Gerald stated: “I revoke all of my prior wills and codicils.” This statement reflects a clear intent to revoke and should be honored. See LSA-C.C. art. 1607, Revision Comments — 1997. Thus, we are unable to find that the trial court erred in | ^finding that the revocation clause in Gerald’s 2006 authentic-act document constituted a formal revocation of his 1993 testament under LSA-C.C. art. 1607(2).[15]

Answer to Appeal

The Franklins answered the appeal seeking the reversal of the portion of the judgment that voided and recalled the letters of independent administration issued to them. On March 14, 2008, the trial court determined that Gerald’s 2006 testament was invalid, and Melinda’s appointment as executrix pursuant to that document was recalled. Because Melinda’s removal had not been reduced to a written judgment when the trial court issued the letters of independent administration to the Franklins on April 3, 2008, the trial court declared that the appointment of the Franklin children as independent administrators was premature and had to be withdrawn. The Franklins contend that the trial court was incorrect *1065 since Melinda’s January 29, 2008 appointment as executrix pursuant to the 2006 testament was invalid ab initio, and there was no valid succession administrator in place.
In light of the facts that the recall of Melinda’s appointment as executrix had not yet been reduced to writing, the trial court had not yet ruled on the validity of the 1998 testament when the appointment of the Franklins was made, and the trial court had not yet considered Melinda’s opposition to the Franklins’ request for appointment, we find no error or abuse of discretion in the trial court’s decision to recall the letters of independent administration that were issued to the Franklins.

Decree

For the foregoing reasons, the judgment of the trial court is affirmed. Each party is to bear their own costs related to this appeal.
AFFIRMED.
McCLENDON, J., agrees in part and dissents in part and assigns reasons.

. Letters testamentary were issued to Melinda on April 25, 2008.

. Further action in this case was stayed during the pendency of this appeal.

. Although Article 1573 was added by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999, it is based on the provisions of Article 1595 of the Civil Code of 1870 and does not change the law. LSA-C.C. art. 1573, Revision Comments — 1997.

. Although Article 1576 was added by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999, it did not change the law. LSA-C.C. art. 1576, Revision Comments — 1997, comment (a).

.Article 1577 was added by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999; however, it reproduces the substance of LSA-R.S. 9:2442, which was repealed effective July 1, 1999, and which established the form for a statutory will. See LSA-C.C. art. 1577, Revision Comments — 1997, comment (a).

. In Evans, the supreme court addressed whether the penalty provision for noncompliance with the testamentary formalities applied to statutory wills. See former LSA-C.C. art. 1595; former LSA-R.S. 9:2442. The court noted that it is a fundamental principle of statutory construction that laws concerning the same subject matter must be construed with reference to each other. See LSA-C.C. art. 13 (which reproduces the substance of former LSA-C.C. art. 17). Former LSA-C.C. art. 1595 was found to proscribe the consequences of a failure to heed to the formalities set forth in the articles disqualifying certain persons from acting as witnesses to a testament that preceded it. The failure to comply with codal requirements (pertaining to witnesses) resulted in the invalidity of the will in its entirety, not just the bequest to the witness. Absent some express statement by the legislature to the contrary, the court was bound to declare the will null and void. Evans, 410 So.2d at 732 & n. 7. Justices Marcus, Lemmon, and Blanche dissented based on a finding that former LSA-C.C. art 1595 was not applicable to the facts of the case. The dissenters believed that the bequest to the legatee who was a witness to the will should be invalidated, leaving the remainder of the will valid. Evans, 410 So.2d at 734-35.

. Succession of Roussel involved a nuncupa-tive testament by private act that had been witnessed by six witnesses, two of which did not reside in the parish in which the will had been executed as required by former LSA-C.C. art. 1581. Succession of Roussel, 373 So.2d at 157-58.

. Succession of Hoyt involved a two-page will signed only on the second page. After noting that the purpose of the requirement that the testator sign his name on each separate sheet is to prevent fraud by the substitution of one typewritten page for another after the execution of the will by the testator, the court affirmed the trial court judgment invalidating the will. Succession of Hoyt, 303 So.2d at 189.

. Land also involved a two-page will that had been signed only on the second page. Land, 193 So.2d at 412. The first page of the will contained some or all of the dispositive portions and had not been signed by the testator. The court found that the absence of the testatrix’s signature on each page or sheet of the will was fatal. Therefore, the will was declared to be invalid. Id. at 414.

. The fifth circuit in In re Succession of Simonson, recently addressed the validity of a notarial testament where the trial court denied the probate of a notarial testament because the testator’s signature was absent from page six of a seven-page instrument. The unsigned page related solely to the powers of the trustee to make disclaimers and invest in tax exempt securities and the trustee’s powers regarding transactions between the estate and the trust. There were no allegations of fraud, and no critical provisions on page six of Si-monson's will. Simonson had signed at the end of each dispositive, appointive, or directive provision in the testament. The court noted that where the departure from form has nothing whatsoever to do with fraud, ordinary common sense dictates that such departure should not produce nullity, although the unsigned page must be deemed invalid. In re Succession of Simonson, 982 So.2d at 146. Because the invalidation of the unsigned page did not inhibit the faithful execution of Si-monson's dispositive intent or require nullification of the will in its entirety, the court concluded that the trial court erred in denying probate and in denying the judgment of possession. Id.

. In Succession of Porche v. Mouch, 288 So.2d 27 (La. 1973), the supreme court held that it was immaterial for any substantial purpose whether the testator’s signature was placed before or after any formal attestation clause by the notary and two witnesses at the end of the will. Succession of Guezuraga, 512 So.2d at 369.

.In 1974, LSA-R.S. 9:2442 was amended by 1974 La. Acts, No. 264, § 1, to require the facts regarding the execution of the will be evidenced by a declaration signed by the notary and both witnesses, settling the issue of whether the testator must sign at the end of the will or after the attestation clause. Succession of Guezuraga, 512 So.2d at 369. The court observed it was now clear that the testator need not sign after the attestation clause. See Id.

. Since the testator in In re Succession of Simonson, 982 So.2d 143, had signed at the end of each dispositive provision in the testament, we find that the court’s reasoning in In re Succession of Simonson is not determinative of the validity of Gerald’s 2006 testament. However, the holding in that case seems to be contrary to the strict interpretation of LSA-C.C. art. 1573.

. Succession of Feitel was overruled in part on other grounds by Succession of Jenkins, 481 So.2d 607 (La. 1986).

. We note that, on the last page of the 2006 document, Gerald did not sign his name after concluding the dispositive, appointive, and directive provisions, but instead signed after the declaration or attestation clause along with the two witnesses and the notary. If Gerald had followed the opposite sequence, our conclusion may have been different. See LSA-C.C. art. 1833(A).