JAMES F. McKAY III, Chief Judge.
Ixln this succession case, the trial court found that a valid will existed but certain heirs could no longer inherit due to a change in the law of forced heirship. For the following reasons, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
On March 12, 1983, Thomas Dean, Sr. executed his last will and testament. In that will, Mr. Dean left his three adult children, Thomas Dean, Jr., Angela Dean, and Cyril Dean, the forced portion of his estate, subject to the legal usufruct of his wife, Melba S. Dean. Mr. Dean left the disposable portion of his estate to Melba Dean. Melba Dean was not the mother of Mr. Dean’s children. Thomas Dean, Sr. died on May 9, 2004.
On December 6, 2004, Melba Dean and her daughter from a previous marriage, Karen Owens, filed a petition for possession, an affidavit of death and heirship, a sworn detailed descriptive list, and a judgment of possession. A petition for probate was not filed. The original will was not in the possession of the clerk of court, who possessed only copies. That same day, the duty judge, | gJudge Michael Bagneris, signed a judgment of possession placing Melba Dean in possession of all of the decedent’s property.
In June of 2006, Melba Dean filed an amended judgment of possession and memorandum in support thereof.[1] Mrs. Dean argued that the decedent’s children were above the age of majority and were not forced heirs at the time of their father’s death. The memorandum also reiterated that Melba Dean was the decedent’s sole heir and was granted ownership and possession of all of the decedent’s property. On June 19, 2006, Judge Sidney H. Cates, TV signed the amended judgment of possession.
In May of 2008, the decedent’s three children filed a petition to annul judgment of possession and probated testament on the grounds that there were irregularities as to form and content in the alleged testament. Among other things, they allege they received no notice of Melba Dean’s intent to open the succession or probate a copy of the purported will; the petition for possession and the judgment of possession do not reflect the decedent’s intentions regarding the disposal of the estate; the petition for possession does not state that the will being submitted for probate is a copy; there are no allegations in the judgment of possession that the decedent did not revoke the original will by destroying it; the will was probated without giving them an opportunity to object; the judgment of possession incorrectly excludes them and delivers the entire estate to the decedent’s widow; and the property transferred by the alleged testament was the | ^separate property of the decedent and in the absence of a testament, decedent’s estate is governed by the laws of intestacy.
In June of 2009, Mr. Dean’s children filed a motion for summary judgment on the petition to annul the judgment of possession. Following a hearing, the trial court granted the motion in part and annulled the two judgments of possession in September of 2009. The court also granted Angela Dean Burbank’s request to be appointed administrator of the succession.
In March of 2010, Ms. Burbank filed a petition for declaratory judgment seeking to have the document purporting to be the last will and testament of her father de- *529 dared to be invalid. She contended that there was no evidence to rebut the presumption that her father destroyed the original will. Ms. Burbank moved for summary judgment on her petition for declaratory judgment, but the trial court denied the motion for summary judgment in December of 2010.
Trial on the motion for declaratory judgment was held on January 12, 2012. At trial, Melba Dean’s adult daughters, Karen Owens and Novella Sheppard, testified that following the death of Mr. Dean, they found his original will with a raised seal on it in a file cabinet in his home. They testified that they gave the will to the decedent’s attorney, Michael J. Phillips. Mr. Phillips testified that he filed the original will and several copies when he filed Melba Dean’s original pleadings. According to Mr. Phillips, he then presented the original will and other pleadings to Judge Bagneris, who signed the judgment of possession. Mr. Phillips further ^testified that he brought the pleadings, including the original will, to the clerk’s office and left them with an unknown female clerk.
Ms. Tina Seghers, a long-time docket clerk at Civil District Court, testified that she received only copies of the will. She documented this by writing “copy of wills in vault (no original filed)” on the petition for possession and “copy of will (no original filed)” on the envelope placed in the vault containing the wills. Ms. Seghers also testified that no will had ever been lost during her thirty-five years as a clerk. Judge Michael Bagneris and Thomas Dean, Jr. also testified at trial.[2]
The trial court considered the testimony but was unable to explain what happened to the decedent’s will from the time the original will was given to Mr. Phillips and the pleadings made their way to Ms. Segh-ers. However, the trial court found that there was sufficient evidence to conclude that the original will existed at the time of the decedent’s death and was not destroyed by the testator.
The next issue that the trial court considered was how to interpret Mr. Dean’s will. In his will, Mr. Dean left the forced portion of his estate to his children, but at the time of death his children were not forced heirs under the law. For guidance, the trial court looked to La. C.C. art. 870 and In re Succession of Collette, 2009-70 (La.App. 3 Cir. 6/3/09), 11 So.3d 724. Based on its analysis, the | r,trial court concluded that succession rights are governed by the law in effect on the date of the decedent’s death. Furthermore, the trial court reasoned that by using language such as “forced portion” and “disposable portion” rather than a numerical value, the testator employed language that had a specific legal meaning and that language should be interpreted according to the law in effect at the time of the decedent’s death. Therefore, the trial court found that Melba Dean was the decedent’s sole *530 heir. It is from this judgment that Mr. Dean’s three children now appeal.
DISCUSSION
On appeal, the appellants raise the following assignments of error: 1) the trial court committed legal error by not applying the correct burden of proof, clear and convincing, to appellee’s chore of overcoming the presumption that the testator revoked the will by disposing of the original; 2) appellee did not overcome the presumption of revocation by showing through clear and convincing proof that the testator did not revoke the will by disposing of the original prior to his death; and 3) even if appellee overcame the presumption of revocation by clear and convincing proof, the Dean children are entitled to fifty percent (50%) of their father’s estate in accordance with their father’s intentions as expressed in the will.
The presumption, that a testator destroyed a missing will with the intent to revoke, may be rebutted by clear proof: that the testator made a valid will; of the contents and substance of the will; and that will though not found at testator’s death, was never revoked by the testator. Succession of Justice, 28,363 (La.App. 2 Cir. 8/23/96), 679 So.2d 597. In' the instant case, Mr. Dean made a valid will on March 12, 1983. The contents and substance of this will is known because copies of the will exist. Unlike Succession of Justice, the original will was actually found after Mr. Dean’s death; it only later disappeared. Melba Dean’s daughters testified that they found the original will and gave it to Mr. Dean’s attorney, Michael Phillips, who testified that he filed the original will along with other pleadings at Civil District Court. This testimony was not controverted and there is no evidence that the will was destroyed by Mr. Dean. Therefore, based on the clear evidence before it, the trial court concluded that a valid will existed at the time of Mr. Dean’s death.
The trial court’s conclusion that Mr. Dean’s will existed at the time of his death is a factual finding subject to the manifest error/clearly wrong standard of review. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). An appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless it is clearly wrong. Id. There is no indication that the trial court was clearly wrong or manifestly erroneous in finding that Mr. Dean’s original will existed at the time of his death. Accordingly, we find no error as to the appellants’ first two assignments of error.
In their final assignment of error, the appellants contend that they are entitled to fifty percent (50%) of their father’s estate in accordance with his intentions as expressed in the 1983 -will. When Mr. Dean executed his will, he left his “beloved” children the “forced portion” of his estate. Considering that he had [7three children (Thomas Dean, Jr., Cyril Dean, and Angela Dean Burbank), the forced portion would have been fifty percent (50%) of his estate at the time the will was made. However, the trial court ruled that Mr. Dean’s children were entitled to nothing because under the law in effect at the time of Mr. Dean’s death, they were no longer forced heirs. As stated earlier, the trial court relied on La. C.C. art. 870 and In re Succession of Collett, 2009-70 (La.App. 3 Cir. 6/3/09), 11 So.3d 724.
Louisiana Civil Code Article 870(B) states: “Testate and intestate succession rights, including the right to claim as a forced heir, are governed by the law in effect on the date of the decedent’s death.” In Collett, the Third Circuit held that the decedent’s adult children were entitled to nothing because in his will, the testator used the term “forced portion” instead of a *531 numerical value. The Court reasoned that because the testator used the language “forced portion” there was no intent to leave his children anything more than required by the law.
The Third Circuit’s reasoning is very subjective in its attempt to delve into the mind of the deceased testator. How can they know that the decedent would choose to leave his children nothing based on his use of the term “forced portion” instead of a numerical value? The decedent was layman and the term “forced portion” had a specific legal meaning at the time of he made his will. The decedent may or may not have been aware of the change in the law of forced heirship between the time his will was made and the date of his death. To assume that the testator was aware of the change in law and by not making a new will he intended to leave nothing to his children is a stretch in judgment. He could just as lseasily have been ignorant of the change in law and assumed that his will meant exactly the same thing it meant on the day he made it.
Accordingly, we disagree with the Third Circuit’s holding in Collett According to La. C.C. art. 1611:
A. The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules for interpretation apply only when the testator’s intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence.
B. When a testament uses a term the legal effect of which has been changed after the date of execution of the testament, the court may consider the law in effect at the time the testament was executed to ascertain the testator’s intent in the interpretation of a legacy or other testamentary provision.
La.C.C. art. 1611.
La. C.C. art. 1612 states: “A disposition should be interpreted in a sense in which it can have effect, rather than in one in which it can have none.” It is also important to note that the cardinal principle of the interpretation of acts of last will is to ascertain and honor the intent of the testator ascribing meaning to the disposition so that it can have effect. Derouen v. Derouen, 2003-623 (La.App. 3 Cir. 1/28/04), 865 So.2d 940.
As evidenced by the Civil Code and our jurisprudence, there is a longstanding principle of trying to honor the testator’s intent if at all possible. In addition, the clear language of La. C.C. art. 1611(B) expressly authorizes this Court to consider the law in effect at the time Mr. Dean’s made his will in order to ascertain his intent toward his children. When Mr. Dean made his will his three children were forced heirs and entitled to fifty percent (50%) of his estate. There is |9no evidence or other indication that Mr. Dean intended to leave nothing to his children if the law had not required him to leave them their forced portion. To the contrary, Mr. Dean refers to his children as “beloved” in the will. When we consider the language of Mr. Dean’s will along with La. C.C. aits. 1611 and 1612, it favors leaving Mr. Dean’s children what would have been their forced portion at the time he made the will, i.e., fifty percent (50%) of his estate.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court’s finding that a valid will existed at the time of Mr. Dean’s death. However, we reverse the trial court’ finding that Mr. Dean’s children *532 were entitled to nothing and hold that they are entitled to fifty percent (50%) of their father estate, i.e. their forced portion at the time the will was made.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
BELSOME, J., dissents with reasons.
BONIN, J., concurs in part and dissents in part and assigns reasons.

. This was apparently done because Fidelity Homestead Association had refused to release and deliver certain funds to Mrs. Dean.

. Thomas Dean, Jr. testified that his father told him that he needed to make a will shortly before he died. However, there is no evidence that his father ever made a new will or destroyed his existing will. Louisiana Civil Code Article 1607 provides the requirements for the revocation of the entire testament by the testator. La. C.C. art. 1607 states:
Revocation of an entire testament occurs when the testator does any of the following:
(1)Physically destroys the testament, or has it destroyed at his direction.
(2) So declares in one of the forms prescribed for testaments or in an authentic act.
(3) Identities and clearly revokes the testament by a writing that is entirely written and signed by the testator in his own handwriting.
Thomas Dean, Jr.’s testimony that his father intended to make a new will is insufficient to satisfy these requirements of La. C.C. art. 1607. No other evidence of revocation was introduced.