988 So.2d 778 (2008)
SUCCESSION OF Kenneth Eugene CARROLL.
No. 08-CA-89.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2008.
Raymond P. Ladouceur, Jane C. Alvarez, Ladouceur and Ladouceur, L.L.C., Abita Springs, Louisiana, for Plaintiff/Appellant, Susan G. Carroll.
Jack M. Alltmont, Max Nathan, Jr., Danielle M. Ross, Sessions, Fishman, Nathan & Israel, L.L.P., New Orleans, Louisiana, for Defendants/Appellees, Independent Executrix, Isabel Wingerter and for the Succession of Kenneth Eugene Carroll.
Evangeline M. Vavrick, Evangeline A. Vavrick, New Orleans, Louisiana, for Defendants/Appellees, *779 Carroll Trust Beneficiaries.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
Appellant, Susan Carroll, has appealed the trial court judgment annulling the probate of a letter written by the decedent, Kenneth Carroll and finding the last will and testament of decedent dated February 14, 1999 to be valid. For the reasons that follow, we affirm.

FACTS:
The decedent, Kenneth Carroll, was married to Leslie Carroll and they had four children. Leslie Carroll died in January 1999. Shortly thereafter, the decedent sought advice of Leslie's sister, Isabel Wingerter, an attorney, to assist in preparing a will. The decedent executed a statutory will on February 14, 1999, in front of Donald Wingerter, which established two testamentary trusts. One trust, known as the Carroll Trust, was for the benefit of the four children of his marriage to Leslie and the other was for the benefit of his granddaughter, Brittany Carroll. The will provided that everything of which he died possessed, other than the particular legacy for the Brittany Carroll Trust, go into the Carroll Trust in which his four children were the beneficiaries. The Carroll Trust was also the beneficiary of several life insurance policies. The will named Ms. Wingerter executrix of his estate and trustee of the testamentary trusts.
In October 2003, decedent traveled to Hawaii where he married Susan Carroll. Before leaving for this trip, on October 9, 2003, decedent hand wrote a letter addressed to Ms. Wingerter in which he instructed certain assets be provided to Susan Carroll if he died "before I am able to see you personally". The letter provided that certain assets were to be provided in the event Mr. Carroll died before the marriage and certain assets were to be provided to Susan Carroll if Mr. Carroll died after the marriage. This included the payment of health insurance premiums for Mrs. Carroll. This letter is attached as Appendix 1.
In December 2003, decedent gave Ms. Wingerter another writing[1], listing numerous life insurance policies, and allocating various assets to different heirs. This writing provides that Susan Carroll receive $100,000 in the event Mr. Carroll dies a natural death, $200,000 in the event he dies an accidental death and that Susan Carroll receive a share in the trust "equal to the kids". This writing is attached as Appendix 2.
Susan Carroll testified that she and decedent were married on October 15, 2003 in Hawaii. In October 2006, decedent was diagnosed with cancer. Decedent died on May 15, 2007. On June 13, 2007, Ms. Wingerter filed a petition to probate the February 14, 1999 will as well as the October 9, 2003 letter she termed a codicil. An affidavit was executed by two witnesses attesting that they knew the decedent and recognized his handwriting and signature on the October 9, 2003 document. On June 13, 2007, the trial court signed an order letting "the notarial testament along *780 with the olographic codicil of Kenneth Eugene Carroll, deceased dated February 14, 2007 [1999] be filed and recorded and executed according to law." On September 18, 2007, Susan Carroll filed a rule to show cause why the executrix, Ms. Wingerter, should not turn over funds to her under the terms of the October 9, 2003 letter. This was in response to a letter Susan Carroll received from Ms. Wingerter stating the health insurance policy would terminate October 1, 2007. The trial court signed a judgment on October 29, 2007 ordering the health insurance premium continue to be paid and that the executrix file a petition for declaratory judgment to determine the validity of the codicil. On November 5, 2007, the Carroll children filed a petition to annul the probate of the October 9, 2003 letter, claiming it to be invalid and unenforceable. On November 13, 2007, Ms. Wingerter filed a petition for declaratory judgment requesting the court to determine whether the October 9, 2003 letter contains sufficient animus testandi as required by law to constitute a valid olographic codicil.
On November 16, 2007, following a hearing, judgment was rendered annulling the probating of the October 9, 2003 letter and ordering the executrix to carry out her duties pursuant to the February 14, 1999 will. Prior orders relative to disbursements to Susan Carroll were also annulled. This judgment was certified as a final appealable judgment and this timely appeal followed.

LAW AND DISCUSSION:
On appeal, Susan Carroll contends the trial court erred in excluding extrinsic evidence of decedent's intent. Mrs. Carroll argues that because the language of the October 9, 2003 letter, referred to by Mrs. Carroll as a codicil, is ambiguous, the trial court erred in not allowing the introduction of the December 2003 document to prove testamentary intent. Mrs. Carroll argues a reading of the transcript indicates the trial court based its holding on the phrase "before I can meet with you" in the bequest, concluding that since decedent took no action to follow up and meet with Ms. Wingerter upon return from Hawaii, he did not intend to implement the provisions of the October 9, 2003 letter. Mrs. Carroll contends that the court should consider the December 2003 writing together with the October 9, 2003 letter and the February 14, 1999 will to establish that the decedent had testamentary intent at the time he penned the October 9, 2003 letter. Mrs. Carroll goes on to argue that the trial court's interpretation of the October 9, 2003 letter is manifestly erroneous because the October 9, 2003 letter is in proper form for an olographic will and the December 2003 writing is a follow up to the October 9, 2003 letter which indicates testamentary intent to provide for Mrs. Carroll upon his death. Mrs. Carroll argues that it was not necessary for decedent to meet professionally with Ms. Wingerter to change the February 14, 1999 will because decedent had "taken his testamentary bequests into his own words and hand." Mrs. Carroll argues that a disposition should be interpreted to give it effect rather than to deny its effect. Mrs. Carroll further argues that it does not make sense that decedent only intended for his surviving spouse to receive a portion of his estate until they returned from Hawaii and that his failure to meet with Ms. Wingerter renders this intention without effect.
In response, the Carroll children contend the trial court correctly excluded extrinsic evidence to prove intent. They contend the intent of the October 9, 2003 letter was that another document be prepared by Ms. Wingerter. The Carroll children point out that there is nothing in the October 2003 letter to show the decedent *781 intended the letter to be his last will or codicil. They contend the October 9, 2003 letter imposes conditions before action was to be taken, i.e. he had to die before or after the marriage before returning to New Orleans for the conditions of this letter to take place. The Carroll children further argue that had the decedent intended to leave Mrs. Carroll the amounts included in the October letter, as a long time insurance agent, he could have simply made her a beneficiary on one of his numerous life insurance policies.
There is no question that the February 14, 1999 will is valid. The December 2003 writing is not before the court, as the petition for declaratory judgment only requests that the court determine whether the October 9, 2003 letter was a valid codicil and the judgment appealed from makes no determination relative to the December 2003 writing. Thus, the only question to be determined by this court is whether the trial court correctly annulled probate of the October 9, 2003 letter.
Civil Code article 1610 provides that any modification of a testament must be in one of the forms prescribed for testaments. There are two forms of testaments: olographic and notarial. LSA-C.C. art. 1574. An olographic testament is one entirely written, dated and signed in the handwriting of the testator. LSC.C. art. 1575. The only other requirement for an olographic testament to be valid is that the document itself evidence testamentary intent. Succession of Mott, 97-1419 (La.App. 3 Cir. 7/8/98), 715 So.2d 1258. Extrinsic or parol evidence cannot be used to establish testamentary intent. Succession of Bernstine, 04-739 (La.App. 3 Cir. 12/22/04), 890 So.2d 776, writ denied, 05-0182 (La.4/22/05), 899 So.2d 555. In the absence of testamentary intent, there is no will. Succession of Faggard, 152 So.2d 627 (La.App. 2 Cir.1963).
In Hendry v. Succession of Helms, 557 So.2d 427 (La.App. 3 Cir.1990), writ denied, 560 So.2d 8 (La.1990), the decedent executed a statutory will on July 1, 1985. On April 20, 1988 she met with her attorney and delivered a dated, signed, handwritten letter expressing her intention to draft a new will and instructions on the division of her assets in the new will. Decedent died the next day before the new will could be drafted. The court stated "a document presented for probate must reflect animus testandi." Id. at 429. The court found the letter to decedent's attorney could not be considered a valid olographic will because it lacked testamentary intent. It was determined by the court that the letter was intended as information to be used by decedent's attorney in drafting the new will.
In Succession of Rhodes, 39,364 (La. App. 2 Cir. 3/23/05), 899 So.2d 658, writ denied, 05-0936 (La.6/3/05), 903 So.2d 459, and writ denied, 05-1044 (La.6/3/05), 903 So.2d 460, the decedent wrote a letter to his attorney instructing the attorney to remove his son from all inheritance privileges previously conferred upon him. In the letter, decedent asked his attorney to serve as administrator of his estate. The letter requested his attorney cancel all previous wills and instructed as to how he wanted his assets divided. The new will was never written and a proposed legatee under the letter sought to challenge the original will and to probate the letter. In affirming the trial court's denial to probate the letter, the Third Circuit noted the letter begins by stating "it is an `attempt to explain' his `last desire,' rather than saying the instrument is his last will or a disposition of his property." Id. at 661. The court further noted that in the letter decedent instructed the attorney to "take action" to remove his son and terminate the son's power of attorney. Id. The court *782 concluded that these instructions were not consistent with a situation where the decedent intended to covey his property by means of this particular instrument. Rather, the court found, the statements demonstrate that the decedent expected the attorney to prepare additional documents to carry out his wishes. Id. Thus, the court concluded the decedent did not intend to dispose of his property upon his death by means of that particular letter and as such it did not constitute a valid olographic will. Id. at 662.
In Succession of White, 06-1002 (La. App. 1 Cir. 5/4/07), 961 So.2d 439, the court found a three page dated, signed document which began with the location of various assets and how the assets are to be disposed to be a valid olographic will, even though the decedent did not use terms such as "bequest" or "bequeath". The court found that a reading of the documents as a whole "exemplifies more than mere hopes or an inventory of assets." Id. at 442. The court distinguished the facts from those in Hendry v. Succession of Helms, supra, noting there was no testimony that the document was given to an attorney as a guide for the drafting of a new will. The court concluded that on its face and by its own language, the intent of the document was to dispose of decedent's assets.
In the case at bar, the proposed olographic codicil contains the phrases "in the event of my death before I am able to see you personally please make arrangements to ..." and "if after the marriage and before I can meet with you, I die and she survives". We find this language indicates a conditional testamentary intent for a limited period of time. This letter contains clear instructions to decedent's attorney of how to proceed if something happens to him during his trip and before he returned and could meet with her. Ms. Wingerter testified that she saw decedent numerous times between October 2003 and the date of his death, some three and a half years later, and decedent never requested that she prepare a new will or make a formal modification to the 1999 will to include provisions for Mrs. Carroll. The evidence also indicates that decedent and Mrs. Carroll met with another attorney to execute a pre-nuptial agreement and that decedent employed other attorneys throughout his career as an insurance agent. Additionally, the decedent was diagnosed with a terminal illness some seven months before his death. Thus, the evidence presented indicates that decedent took no steps to formalize or make unconditional the instructions in the October 2003 letter. We reject Mrs. Carroll's position that it was not necessary for decedent to take any further steps to provide for Mrs. Carroll's well being after his death. The requisite testamentary intent contained in the October 9, 2003 was conditioned upon decedent not returning from Hawaii and having an opportunity to meet with Ms. Wingerter. As the evidence shows, decedent returned from Hawaii and saw Ms. Wingerter on numerous occasions, thus, the testament terminated by its own conditions. Additionally, the language in the October 9, 2003 letter is clear in its meaning and extrinsic evidence is not needed to interpret this language. Accordingly, the trial court correctly annulled the prior order admitting the October 9, 2003 letter to probate. This finding pretermits a discussion of the remainder of appellant's assignments of error.

CONCLUSION:
For the foregoing reasons, the judgment of the trial court is affirmed. Each party is to bear its own costs.
AFFIRMED.

*783 APPENDIX 1:

From: Kenneth E. Carroll
To: Isabel Wingerter
In the event of my death before I am able to see you personally please make arrangements to add Jason's daughter Kathleen to the Trust in the same manner as we now have Brittany.
I will be traveling with Susan Schilling with whom I will be married on October 15th. If before the marriage I am unable to communicate with you because of my death or total and unreversible incapacitation it is my desire that she receive the following from the Carroll Trust:
1) Pay off her home mortgage
2) Funds not to exceed $20,000 for a new automobile
3) $100,000 from the proceeds of the life insurance presently dedicated to the trust
If after the marriage and before I can meet with you I die and she survives, she is to receive in addition to the above (mortgage payoff, car purchase and $100,000):
4) $1,000 month for as long as you or your appointee feel is necessary to maintain a normal lifestyle. If she remarries it should stop.
5) Adequate health insurance till 65 yrs old unless in your opinion or your appointed you feel that her behavior or lifestyle is contributing to her ill health it should stop. If medical bills, health insurance premiums or other needs exceed what you or your appointed believe is an amount that would endanger the integrity of the trust you or your appointed have the authority to adjust as necessary.
All the above should apply notwithstanding the pre-nuptial agreement in force at the time of the marriage.

 10/9/03 Kenneth Carroll

APPENDIX 2:

12/8/03
 500,000 Guardian Life
 325,000 S.F. Ins.
 20,000 S.F. on
 325,000 A/D S.F. me
 To Suzie
 100,000 natural death
 200,000 accidental death

A share equal to the kids in the trust All other life insurance to trust
 Other assets
 House | check w/ Greg Towle for value
 Rental at time of Leslie Death
Stocks-ck w/ S.F.
*C.D. 37K Purchased after L.D.
Cash value on about 10 life insurance policies
on kids
and me. Let the trust keep them
Guns, boats, and fishing equipment
divide between Jason and Kenny. Get
approximate value & give Steve $
Leslie jewelry is in safety deposit
Box # 33 Gulf Coast Bank Vets Blvd
All for Kelly if she straightens out
Car goes to Suzie
P.U. truck to Steven
 Government policies
Office equipment &cir; to Jason if
He's still in insurance business
You can approve early withdrawal
Of his portion of trust to start
Up a new business but only
start up funds. Others have
same option.
Termination pay from S.F. should
*784
be about 450 to 500K and
should all go to trust
If I hit the mother load
in California all to the trust but
I guess because litigation started
In 1998 kids share it as well
as value of agency at Leslie's death
I pay for life ins for
 Kenny 50K |
 Kelly 100K term let trust pay them
 Jason 100K | w/ trust as beneficiary
 Karen 100K
 Brittany 50K | cash
 Katheryn 50K value
Let L. D'Angelo buy my share
Of 2 oat burners
All household furnishings go to Suzie
The book is the only material
thing I every cared about and
as no kid of mine has shown
any great interest it will stay
in the trust until someone in
the future proves worthy. Tell them
its "my fortune"
Note: A the time Leslie died we
owed approximately 125K interest and
penalty to I.R.S. & state taxes
& this should be calculated in value of
estate at time of Leslie's death.
Terry Alareo can get the correct # s
In matters concerning S.F. I would
check with Jerry King if you have any
problems.
Kenneth Carroll
12/8/03
NOTES
[1] At the hearing, Ms. Wingerter testified that this writing was not signed and dated. However, after the hearing, she reviewed the original and determined that this writing was signed and dated. The appellate record has been supplemented with a signed and dated copy of this writing. A Petition to Annul Judgment Due to Fraud filed by Susan Carroll is pending in the district court. This Court makes no ruling and takes no position relative to that motion.