MARION F. EDWARDS, Judge.
 

 laThis issue presented to us in this succession proceeding is whether a handwritten document signed and dated by the decedent is a valid olographic codicil to the decedent’s will. This matter has been before this Court in a prior appeal
 
 [1]
 

 (Carroll I).
 
 In
 
 Can-oil I,
 
 this Court examined a different writing by the decedent and agreed with the trial court that the document did not constitute a valid olographic testament. We find now, as we did in
 
 Carroll I,
 
 that the document at issue herein is not a valid olographic testament.
 

 FACTS
 

 Kenneth Eugene Carroll (“Mr. Carroll” or “the decedent”) was married to Leslie Carroll (“Leslie”) for over thirty years. Four children were born of the marriage. When Leslie died in 1999, Mr. Carroll sought advice from Leslie’s sister, Isabel Wingerter (“Ms. Wingerter”), an attorney, to assist in preparing a |3will. Mr. Carroll executed a statutory will on February 14, 1999, which established two testamentary trusts. One trust, known as the Carroll Trust, was for the benefit of the four children of his marriage to Leslie and the other was for the benefit of his granddaughter, Brittany Carroll. The will provided that everything of which he died possessed, other than the particular legacy for the Brittany Carroll Trust, would go into the Carroll Trust in which his four children (the Carroll children) were the beneficiaries. The Carroll Trust was also the beneficiary of several life insurance policies on Mr. Carroll’s life. The will named Ms. Wingerter executrix of the estate and trustee of the testamentary trusts.
 
 [2]
 

 In October 2003, the decedent traveled to Hawaii where he married Susan G. Carroll (“Susan”).
 
 [3]
 
 Before leaving for this trip on October 9, 2003, decedent hand wrote a letter addressed to Ms. Wingerter in which he instructed certain assets be provided to Susan if he died “before I am able to see you personally.” The letter provided that certain assets were to be provided in the event Mr. Carroll died before the marriage and gave instructions on what debts of Susan’s should be paid.
 

 In December of 2003, decedent gave Ms. Wingerter another handwritten document, which is at issue in this appeal. This writing indicates that Susan should receive $100,000 in the event Mr. Carroll dies a natural death, $200,000 in the event he dies an accidental death, and that Susan receive a share in the trust “equal to the kids.” Mr. Carroll neither signed nor dated this first document.
 

 Mr. Carroll died on May 15, 2007. Ms. Wingerter filed for and obtained an order of probate of the original will and the olographic codicil dated October 9, 2003. In accordance with the testament, Ms. Wingerter was named the duly appointed testamentary executrix of the Succession. Subsequently, Ms. Wingerter 14filed an
 
 ex parte
 
 motion to present a document, found in Mr. Carroll’s safety deposit box, which appears to be a copy of the December 2003 document with a few penciled in changes. However, this document differs from the one originally given to Ms. Wingerter as it is signed by Mr. Carroll and dated December 8, 2003. Also found with that docu
 
 *14
 
 ment was an undated, but signed note, to Ms. Wingerter that stated the following:
 

 Izzy,
 

 This is to be used only if legally necessary. It is just a guideline if not necessary. Take care of Suzie & her daughter. You’re in charge honey.
 

 P.S.
 

 If the trust goes up in value raise her share at your discression [sic].
 

 Ms. Wingerter requested a declaration by the court on the legal significance of the December 8, 2003 document.
 

 On November 16, 2007, the trial court rendered a judgment annulling the probating of the October 9, 2003 letter and ordering the executrix to carry out her duties pursuant to the February 14, 1999 will. This judgment was certified by the trial court as a final appealable judgment, and the matter was appealed to this Court.
 

 In the course of those proceedings in the trial court, Susan attempted to introduce the December 8, 2003 document at issue in this second appeal as extrinsic evidence of testamentary intent. However, the trial court did not allow the introduction of the document.
 
 [4]
 
 Although Susan raised that ruling as error in the former appeal, because of the procedural posture of the case, that issue was not addressed. Thus, the only document before this Court in the prior appeal was the October 9, 2003 letter.
 

 |fiThis Court affirmed the trial court’s decision, validating the 1999 testament and finding that the October 9, 2003 letter lacked the requirements for a valid olo-graphic codicil. In
 
 Carroll I
 
 we held:
 

 In the case at bar, the proposed olo-graphic codicil contains the phrases “in the event of my death before I am able to see you personally please make arrangements to ...” and “if
 
 after
 
 the marriage and before I can meet with you, I die and she survives”. We find this language indicates a conditional testamentary intent for a limited period of time. This letter contains clear instructions to decedent’s attorney of how to proceed if something happens to him during his trip and before he returned and could meet with her. Ms. Wingerter testified that she saw decedent numerous times between October 2003 and the date of his death, some three and a half years later, and decedent never requested that she prepare a new will or make a formal modification to the 1999 will to include provisions for Mrs. Carroll. The evidence also indicates that decedent and Mrs. Carroll met with another attorney to execute a pre-nuptial agreement and that decedent employed other attorneys throughout his career as an insurance agent. Additionally, the decedent was diagnosed with a terminal illness some seven months before his death. Thus, the evidence presented indicates that decedent took no steps to formalize or make unconditional the instructions in the October 2003 letter. We reject Mrs. Carroll’s position that it was not necessary for decedent to take any further steps to provide for Mrs. Carroll’s well being after his death. The requisite testamentary intent contained in the October 9, 2003 was conditioned upon decedent not returning from Hawaii and having an opportunity to meet with Ms. Wingerter. As the evidence shows, decedent returned from Hawaii and saw Ms. Wingerter on numerous occasions, thus, the testament terminated by its own conditions. Addi
 
 *15
 
 tionally, the language in the October 9, 2003 letter is clear in its meaning and extrinsic evidence is not needed to interpret this language. Accordingly, the trial court correctly annulled the prior order admitting the October 9, 2003 letter to probate. This finding pretermits a discussion of the remainder of appellant’s assignments of error.
 
 [5]
 

 Susan filed a petition to annul the original judgment of probate due to fraud, and to probate the December 8, 2003 handwritten document as a valid codicil to the 1999 testament. The December 8, 2003 document reads as follows:
 

 Jjj.12/8/03
 

 500[,]000 Guardian } Life
 

 325[,]000 S.F. } ins
 

 20[,]000 S.F. } on
 

 325[,]000 A/D S.F. } me
 

 To Suzie:
 

 100,000 Natural Death
 

 200,000 Accidental
 

 A share equal to the kids in the trust All other cite ins to trust
 

 Other assets
 

 House } Cheek w/ Greg Towle for value Rental } at time of Leslie[’Js death
 

 Stocks — Ck w/ S.F.
 

 *C.D. 37k Purchased after L.D.
 

 Cash values on about 10 life ins policies on kids and me. Let the trust keep them. Guns, boats, and fishing equipment divided between Jason & Kenny. Get approximate value and give Steven $ Leslie’s jewelry is in safety deposit box # 33 Gulf Coast Bank Vets Blvd[.]
 

 All for Kelly if she straightens out
 

 Car goes to Suzie
 

 P.U. truck to Steven
 

 Office equipment <& government policies to Jason if he’s still in insurance business. You can approve early withdrawal of his portion of trust to start up a new business but only start up funds. Others have same option
 

 Termination pay from S.F. should be about 450 to 500k and should all
 
 go
 
 to trust
 

 If I hit the mother load in California all to the trust. But I guess because litiga-tions started in 1998 kids share it, as well as value of agency at Leslie[’]s death
 

 |7I pay for life ins for:
 

 Kenny 50k } Term let trust pay them
 

 Kelly 100k } w/ trust as beneficiary
 

 Jason 100k }
 

 Karen 100k }
 

 Britney 50k } Cash
 

 Katheryn 50k } value
 

 Let L. D’Angelo buy my share of 2 oat burners
 

 All household furnishings go to Suzie
 

 The
 
 Book
 
 is the only material thing I ever cared about and as no kid of mine has shown any great interest it will stay in the trust until someone in the future proves worthy. Tell them it’s “my fortune”
 

 Note: A[t] the time Leslie died we owed approximately 125k interest
 
 &
 
 penalty & state taxes to IRS & this should be calculated in value of estate at time of Leslie[’]s death. Terry Alareo can get the correct # ⅛
 

 In matters concerning S.F. I would check w/ Jerry King if you have any problems
 

 After a hearing on the matter, the trial court rendered judgment denying the petition to probate the December 8, 2003 document and further partitioning certain moveables “in accordance with this Court’s oral reasons for judgment which are incorporated herein by reference.”
 
 [6]
 
 Both Su
 
 *16
 
 san and the Carroll children have appealed this judgment.
 

 The transcript contained in this designated record shows that the parties entered into a stipulation that the document presented for probate is in the decedent’s handwriting and that it is signed and dated by the decedent. The parties also stipulated that there are two documents that are essentially the same. The first |Ris a three-page, handwritten note, which was either sent or given to Ms. Wingerter by the decedent. It is not signed by Mr. Carroll. The second document appears to be a copy of the first to which the decedent made some additions and changes. This document was found in decedent’s safety deposit box by Ms. Wingerter after his death. It is also signed and dated and is the document at issue herein. Ms. Win-gerter did not realize at first that the second document was signed and dated. She originally thought it was simply a copy of the unsigned copy that was already in her possession. It was also stipulated that there was no discussion between Ms. Win-gerter and Mr. Carroll about drafting another document after Mr. Carroll gave her any of the documents.
 

 After hearing the arguments of counsel and considering the document in question, the trial judge found the December 8, 2003 handwritten document was not a codicil or a will.
 

 At the same hearing, the trial court considered certain other discovery motions including one for an accounting from Susan on the use of certain property alleged to belong to the estate. In considering those issues, the trial court heard the testimony of Susan. Susan testified that, after she married Mr. Carroll, he told his children to come into his home and take anything they wished to keep. Susan stated that she did not move into Mr. Carroll’s home until five months later. She and Mr. Carroll redecorated the home and purchased new furnishings. Susan stated that there are some items remaining that belong to Mr. Carroll’s children that are in a storage unit in Belle Chasse. She gave the court the exact address of that unit.
 

 Susan was unprepared at the time of the hearing to give a full accounting of rents received and costs paid in the management of various rental properties owned by Mr. Carroll, but she was willing to comply with that request as soon as possible. |n Susan acknowledged that the car and certain books, including a first edition of
 
 The Rubaiyat of Omar Khayyam,
 
 belonged to the estate. She stated that these books were left in the house and are not in her possession at this time.
 

 As to a painting of the Absinthe House created by Mr. Carroll’s daughter Kelly Carroll Urrate (“Kelly”), Susan stated that Kelly had given that to her as a gift. Susan denied any knowledge of the whereabouts of Mr. Carroll’s wedding ring and class ring. Susan also asserted that two of the five televisions sets claimed by the estate were hers before the marriage.
 

 Susan testified that Mr. Carroll told her that all of the new household furnishings were hers to keep.
 

 Kelly, one of Mr. Carroll’s four children also testified at the hearing. She verified that she gave Susan the painting she did of the Absinthe House. However, she also stated that she now wanted it back. Kelly also stated that she and all of her siblings had access to her father’s home before and after he married Susan and were encouraged to take anything they wanted. Kelly corroborated Susan’s testimony that the decedent and Susan redecorated the entire home to start off a new life. Kelly could
 
 *17
 
 not dispute that her father gave all of the new furnishings to Susan.
 

 Carolyn Hicks, who helped Mr. Carroll and Susan redecorate the home after the marriage, testified that she personally helped buy sofas, chairs, lamps, paintings, rugs, tables, and bookcases. She stated that the decedent made it clear that he wanted the home to be decorated the way Susan wanted it and that the furnishings belonged to her.
 

 It appears from argument of counsel that Mr. Carroll and Susan entered into a pre-nuptial agreement in Hawaii. However, that agreement is not in the record before us and there appears to be some question as to it’s validity in Louisiana.
 

 |
 
 UILAW AND DISCUSSION
 

 On appeal, Susan asserts the trial judge erred in considering Mr. Carroll’s “sophistication” in finding the December 8, 2003 document does not have the required testamentary intent. Susan argues that the 1999 testament and the December 8, 2003 document together express Mr. Carroll’s intent. She argues that the statements, “to Suzie $100,000.00” and “all household furnishings go to Suzie” make testamentary intent obvious.
 

 Susan also argues that, as a legatee, she is entitled to conduct discovery.
 

 In response, the Carroll children contend that the document is merely an asset inventory prepared for Mr. Carroll’s attorney and executrix with suggestions as to how to distribute and equalize the movable assets to his four children that were not divisible in kind. The Carroll children further assert that the December 8, 2003 writing is neither a will nor a codicil and that the language of the document confirms that it was Mr. Carroll’s intent to dispose of his assets as set forth in his statutory will of February 14, 1999, establishing two testamentary trusts.
 

 The Carroll children assert that the trial court was correct in finding no testamentary intent in the December document and in dismissing Susan’s discovery motions as moot.
 

 In their appeal, the Carroll children argue that the trial court erred in rendering a judgment granting Susan the furniture and personal possessions in the Carroll home on the evidence adduced at the hearing. They argue that these possessions are part of Mr. Carroll’s estate.
 

 In our first opinion in this matter, we declared the 1999 testament to be valid. None of the parties now argue that the 1999 testament setting up the two trusts is invalid. Thus, the issue before this Court is whether the December 8, 2003 handwritten document is a valid codicil to the 1999 testament.
 

 To be valid, an olographic testament must be entirely written, dated, and signed in the handwriting of the testator.
 
 [7]
 
 The only other requirement is that the document itself evidence testamentary intent.
 
 [8]
 
 In the absence of testamentary intent there is no will.
 
 [9]
 
 Extrinsic or parole evidence cannot be used to establish testamentary intent.
 
 [10]
 

 Letters or written instructions to a decedent’s attorney intended to be used by the decedent’s attorney in drafting a new will do not in themselves evidence testamentary intent.
 
 [11]
 
 A valid olographic
 
 *18
 
 testament must do more than express or explain the wishes or desires of a decedent, the document must show intent to convey decedent’s property by the instrument itself.
 
 [12]
 

 In
 
 Carroll I
 
 we discussed and analyzed the applicable case law, including
 
 Succession of
 
 White,
 
 [13]
 
 on which Susan relies in her argument to this Court. We find now that the circumstances of
 
 White
 
 are distinguishable from the facts of the matter before us. In
 
 White,
 
 although the decedent did not use the terms of art such as “bequest” or “bequeath,” it was clear on the face of the olographic document that it was meant to dispose of decedent’s assets. There was nothing to suggest that the writing in
 
 White
 
 was an inventory of assets or a list of wishes outlined and given to an attorney as a guide for the drafting of a new will.
 

 In the matter before us, we find that the proposed olographic codicil contains instructions to Ms. Wingerter as attorney/executrix/trustee on how to distribute Mr. Carroll’s assets. These wishes, although written down and given to decedent’s attorney, were never put into legal form. Ms. Wingerter was obviously a close 112member of the family and saw Mr. Carroll frequently after receiving the instructions. However, she testified that there were never any discussions in the four years between the writing and Mr. Carroll’s death regarding the drafting of a new will or making formal changes to the statutory will to include Susan. Accordingly, we find the trial court was correct in finding the December 8, 2003 document is not a valid testament.
 

 Because of that ruling, we also find the discovery issues raised by Susan on appeal to be moot.
 

 The remaining issue is the argument by the Carroll children that trial court erred in granting Susan the furniture and possessions in the Carroll home. The Carroll children argue that Susan and Mr. Carroll were separate in property and all of the furniture belonged to Mr. Carroll. They further argue that Susan’s relief must come from a timely legal claim against the executrix of the succession. In support of this argument, the Carroll children cite La. R.S. 13:3721,
 
 [14]
 
 more commonly called the “Dead Man’s Statute.” We do not find that statute controlling in the instant case. This is not a claim against
 
 *19
 
 the estate made by Susan. This ruling came as a result of a motion for accounting filed by the Carroll children for certain rents due and movables asserted to be part of the estate. In connection with | isthat motion, the Carroll children prepared a list of items in the home owned by Mr. Carroll and shared with Susan. Susan argued that several items on the list were hers and not owned by the estate. At the hearing, both parties agreed to offer testimony to decide the issue.
 

 As previously stated, Kelly confirmed Susan’s testimony that the Absinthe House painting belongs to Susan. All of the testimony supports the trial court’s finding that all of the Carroll children had full access to the house and all of the furnishings for at least five months and were not only allowed, but encouraged, to take what they wanted from the home. Further, Susan’s testimony that the new furnishings are hers is supported by the testimony of Carolyn Hicks.
 

 The decision by the trial court to grant Susan the furniture and other possessions in the Carroll home is based on findings of fact by the trial court. A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong.
 
 [15]
 
 Under that standard, the inquiry is whether a reasonable trier of fact could have made the findings at issue in light of the entire record, and where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous.
 
 [16]
 
 Using that standard, we find no error in the trial court’s ruling. Accordingly, we find no merit in this argument.
 

 Susan has filed a motion to strike certain statements of fact from the brief of the Carroll children. In consideration of the issues on appeal before us, this Court has only considered the facts presented before the trial court. Accordingly, this motion is denied as moot.
 

 | uFor the foregoing reasons, the judgment of the trial court is affirmed. Each party to this appeal is to bear its own costs.
 

 AFFIRMED.
 

 [1]
 

 .Succession of Carroll,
 
 08-09 (La.App. 5 Cir. 6/19/08), 988 So.2d 778,
 
 writ denied,
 
 08-1631 (La. 10/24/08), 992 So.2d 1034.
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 .
 
 Id.
 

 [4]
 

 . At the time of the hearing, the only document presented to the trial judge was an unsigned copy of the December 8, 2003 document. The signed document found subsequently has been presented to the court by Ms. Wingerter.
 

 [5]
 

 .
 
 Succession of Caroll,
 
 988 So.2d at 782 (emphasis as found in original).
 

 [6]
 

 . The trial court judgment also rules that certain outstanding discovery matters requested
 
 *16
 
 by Susan are moot and orders Susan to return a car to the succession.
 

 [7]
 

 . La. C.C. art. 1575.
 

 [8]
 

 .
 
 Succession of Carroll,
 
 988 So.2d at 781-83.
 

 [9]
 

 .
 
 Id.
 

 [10]
 

 .
 
 Id.
 

 [11]
 

 .
 
 See, Hendry v. Succession of Helms,
 
 557 So.2d 427 (La.App. 3 Cir.1990),
 
 writ denied,
 
 560 So.2d 8 (La.1990);
 
 Succession of Rhodes,
 
 
 *18
 
 39,364 (La.App. 2 Cir. 3/23/05), 899 So.2d 658,
 
 writ
 
 denied, 05-0936 (La.6/3/05), 903 So.2d 459, and 05-1044 (La.6/3/05), 903 So.2d 460.
 

 [12]
 

 .
 
 Succession of Rhodes, supra.
 

 [13]
 

 . 06-1002 (La.App. 1 Cir. 5/4/07), 961 So.2d 439.
 

 [14]
 

 . Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
 

 (1)A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
 

 (2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
 

 (3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
 

 (4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
 

 The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder.
 

 [15]
 

 .
 
 Stobart v. State through Dep't of Transp. and Dev.,
 
 617 So.2d 880 (La.1993).
 

 [16]
 

 .
 
 Griffin v. Hampton,
 
 08-1206 (La.App. 5 Cir. 3/24/09), 10 So.3d 800, 801-02.