(79 South. 409)

No. 22901.

Succession of MANION.

(May 27, 1918.)

*(Syllabus by the Court.)*

1. PARTITION ⬤⟹44 — PREMATURE DEMAND FOR PARTITION—DISMISSAL.

Where a succession is under administration, and there are major and minor heirs and creditors, a demand, by one of the major heirs, opposed by the others and by the minors, for a partition, is properly dismissed as premature.

2. WILLS ⬤⟹225—REGISTRY AND EXECUTION —SUIT ATTACKING VALIDITY OF DISPOSITION—CONDITIONS PRECEDENT.

An order for the registry and execution of a will, made without citation or hearing of, or issue joined with, parties in interest, and known as the "common," as contradistinguished for the "solemn," form of probate, is merely preliminary and tentative, and it is not necessary that a direct action to annul it should be brought, as a condition precedent to a suit in the same court, to which all parties in interest are cited, attacking the validity of particular dispositions of the will which was the subject of such order.

3. WILLS ⬤⟹476—"CODICIL."

The codicil is embedded in our system of law, and, having been freed from the trammels which bound it under the definition contained in the Code of 1808, art. 83, is not here different from the codicil which is known elsewhere and defined as "an addition or qualification to a will and a part of the will."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Codicil.]

4. WILLS ⬤⟹585(1) — LEGACY — EXTRA PORTION—COLLATION.

Where a testator leaves the disposable portion of his estate to a particular heir declaring that he does not intend such "extra portion" to compensate the legatee for his services as executor, such declaration fixes the status of the legacy as an extra portion, not intended to be collated.

5. WILLS ⬤⟹649 — DIVISION OF EFFECTS — CONSTRUCTION OF STATUTE.

Article 1300 of the Civil Code, which authorizes a "donor or testator" to order that the effects "given or bequeathed" by him shall not be divided within a maximum period of five years, can have no application to the légitime of forced heirs; for even though it may devolve upon them only upon the death of the testator, and his will may contain words of bequest with reference to it, the paramount title comes from the law, and the bequest is merely an acquiescence in that which the law ordains.

6. COMMISSIONS—RIGHTS OF FORCED HEIRS.

In no case can the commission allowed the testamentary executor affect the légitime reserved to the forced heirs of the testator. Civ. Code, art. 1687.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Petition by Martin H. Manion, one of the named executors in the will of Martin Manion, deceased, that the will and codicil be registered and executed and that he be confirmed as executor, and authorized to take an inventory on which an order to that effect was made, with suit by John E. Manion for judgment of partition and for other relief, and pending exceptions of prematurity and no cause of action, the executor filed a provisional account, to which John E. Manion and another filed oppositions and a prayer for a partition, etc. From a judgment maintaining exceptions to the suit first brought, and from a judgment dismissing the oppositions, John E. Manion appeals. Judgments appealed from affirmed in part and reversed in part and case remanded.

Dart, Kernan & Dart, of New Orleans, for appellant John E. Manion. Meyer S. Dreifus, of New Orleans, for appellees Martin H. Manion, Walter J. Manion, Mary Martha Manion, and William J. Manion, minors, Martha Louise Penn, widow of William J. Manion, Catherine M. Manion, wife of John M. Burgess, and Martin H. Manion, testamentary executor.

### Statement of the Case.

MONROE, C. J. The decedent died on January 27, 1917, leaving an estate in New Orleans, three sons and two daughters, all of whom had attained majority, and two instruments, written, dated, and signed by him, the one being his last will and the other a codicil thereto. Those instruments (so far as they need be here quoted) read as follows:

"New Orleans, Dec. 31, 1915.

" * * * I give and bequeath to my sons William J. Manion and Martin H. Manion the disposable portion of my estate that I am permitted by law to dispose of by last will at the time of my death. The balance of my estate I desire to be equally divided between my children who survive me. I desire that my estate shall not be divided or partitioned until five years after my death. I appoint my sons Martin H. Manion and William J. Manion joint executors of my estate, with seizin and without bond. If either should die before me, I desire that the survivor shall act alone. If both should die before me, I appoint the Citizens' Bank & Trust Co. of Louisiana executor, with seizin and without bond. The extra portion that I give to my sons Martin H. Manion and William J. Manion is not to be in compensation for their services as executors. Written, dated, and signed at New Orleans on Dec. 31st, 1915, entirely with my own hand.

"New Orleans, Jany. 12, 1917.

"By this codicil to my will of December 31st, 1915, I, Martin Manion, do give and bequeath to my son Martin H. Manion the disposable portion of my estate that I am permitted by law to dispose of by last will and testament. Written, dated, and signed at New Orleans, Louisiana, on Jany. 12th, 1917, entirely with my own hand."

On January 30, 1917, the two instruments were presented to the district court by Martin H. Manion, one of the named executors, together with a petition in which he prayed that they be registered and executed, and that he be confirmed as executor and authorized to have an inventory taken; and, it having been so ordered, he took the required oath, received his letters testamentary, and on February 15, 1917, filed the inventory. Some two months later (on April 13th), John E. Manion, one of the sons of the decedent, instituted a suit in which he prayed that his coheirs and the executor as such be cited, and that he have judgment (quoting the prayer of the petition) as follows:

"1. Decreeing a partition in kind of the estate owned by the decedent and referring the parties thereto to a notary public to make said partition.

"2. Striking from the will of the decedent the provision therein giving the disposable portion to Martin H. Manion, or else requiring the said Martin H. Manion to collate with the estate this disposable portion.

"3. Decreeing the provision in the original will which prohibits a partition of the estate for five years to be null, void, and of no effect, and striking it from the will, or, in the alternative, limiting it to the disposable portion of this estate.

"4. In the alternative, decreeing a partition, by licitation, of this estate, on such terms and conditions as may be proper.

"5. Recognizing petitioner and defendants as forced heirs of the decedent, and as such entitled to take possession of the property of decedent and to provoke a partition of his estate."

Defendants excepted to the suit so brought, upon the grounds that it is premature, and that the petition discloses no cause of action; and, whilst the exceptions were pending, the executor filed a provisional account, showing assets, consisting, as per inventory, of a gold watch, valued at $50, and 331 shares of the capital stock of Manion & Co., valued at $33,100, together with dividends thereon to the amount of $1,158.50, making a total of $34,308.50; and showing also liabilities consisting of law charges, expenses of last illness and funeral, and ordinary debts to the amount of $4,454.75, thus leaving a balance of assets amounting to $29,853.75 of which no distribution is proposed. John E. Manion and one of the ordinary creditors thereupon filed oppositions —that of Manion setting up objections (which were subsequently withdrawn) to certain items appearing on the debit side of the account, and otherwise predicated upon much the same grounds, and concluding with about the same prayer as are found in the petition previously filed by him. On October 29th there was judgment (signed on November 5th)

143 LA.—26

maintaining the exceptions to the suit first brought, and on November 2d, there was another judgment (signed on November 12th) dismissing the oppositions. John E. Manion has alone appealed from those judgments.

### Opinion.

The appellant relies for the maintenance of his attack upon the will and the support of his opposition to the account upon the following propositions:

1. That the last will of Martin Manion is the document dated January 12, 1917, and that, being such, the provisions of the prior will are null, void, and of no effect.

2. That, even if the first will stands, the prohibition as to partition for five years is null and void as to the légitime of the forced heirs.

3. That the last will does not exempt the legatee from collating the bequest of the disposable portion.

4. That by the terms of the law the executor, who is a legatee of the disposable portion, can claim no commission.

In support of the exception of prematurity of action, counsel for the appellees argues, in effect, that the judgment ordering the execution of the will and confirming the executor does not close the succession or authorize the heirs to partition the property.

In support of the exception of no cause of action, he argues that the judgment in question, though obtained ex parte, must be taken as prima facie valid, and hence immune from collateral attack; that the question of the validity of that clause of the will in which the testator expresses the desire that the estate shall not be partitioned for five years is not now before the court, and can be brought before it only in a direct action of nullity; and that the other propositions upon which appellant relies involve conclusions of law which are not well founded.

[1] 1. It is no doubt true that an executor cannot be devested of the seizin conferred on him by the will until the heirs who demand possession offer him a sum sufficient to pay the movable legacies, and if there be claims against the succession pending in court, and the holders require it, without giving bond for their payment. C. C. arts. 1012, 1659, 1660, 1670, 1671; Succession of Fisk, 3 La. Ann. 707; Bird v. Succession of Jones, 5 La. Ann. 645; Succession of Duffy, 50 La. Ann. 799, 24 South. 277. It is also true that, in this case, there are no movable legacies, nor are there, at the moment, any creditors demanding security, since the occasion for such demand has not yet arisen; but as the executor and his attorney appear upon the account filed by the former as preferred creditors for amounts which, in the aggregate, exceed one-half of the total indebtedness of the succession, and are opposing the demands of the opponent, it may be assumed that they would demand security of him. It may be added that it is not necessary, in order to support the action of partition, that the coheirs or the party commencing it should be in actual possession of the succession or the thing to be divided. C. C. art. 1320. But, though it is not necessary that the person bringing the action should be in possession, it is rather difficult to imagine how a court could proceed to order the partition of property, perhaps by licitation, which is in the possession of an officer or agent, holding as the representative, or for the benefit of third persons, having rights therein other than those of ownership. If, for instance, at the time of the institution of the action in partition, the property happens to be in the hands of the sheriff. under an order of seizure and sale issued in foreclosure of a mortgage imposed by the owner, who had subsequently died, the action could hardly be entertained; and the situation is not materially different where the property is in the hands of an administrator or executor charged with the duty of appro-

priating it to the payment of debts for which it may be liable. And so, as somewhat sustaining that view, the jurisprudence of this court is uniform to the effect that, where a succession has fallen to minors, for whom the law accepts with benefit of inventory, and heirs of age, and either the heirs of age or the creditors demand an administration, the administration should be ordered; and that there can be no putting in possession of the heirs, or partition by them, until it is completed. Succession of Clark, 30 La. Ann. 801; Succession of Bulliard, 111 La. 186, 35 South. 508; Succession of Landry, 117 La. 193, 41 South. 490. Inasmuch, therefore, as there are major and minor heirs and creditors of this succession who are resisting the demands of the single major heir that the heirs be put in possession and the estate partitioned, we are of opinion that those demands have properly been held to be premature.

[2] 2. Considering the exception of no cause of action in so far as it may be predicated upon the idea that this is a collateral attack upon the judgment ordering the will to be admitted to probate, and that appellant should have resorted to a direct action, we are of opinion that it is not well founded. The judgment in question, having been rendered in a proceeding to which the appellant was not made a party, is not conclusive upon him as to the validity of the provisions of the will.

"It is perfectly well settled" (said this court many years ago) "that such a decree is not conclusive upon the heirs not cited, and that, when set up as a muniment of title against their claim for property belonging to their inheritance, the validity of a will thus probated may be called in question * * * collaterally." Provost v. Provost, 13 La. Ann. 574.

The legal situation here presented may be stated as follows: A will in due form, is presented for probate to a court vested with jurisdiction in such matters, and the proponent, having complied with all the requirements of law, obtains an order (called a judgment) for its registry and execution. Upon its face the instrument is in some respects valid, and in other respects it may be invalid, or the question of its validity may be one about which lawyers and courts will disagree. The judge to whom it is presented is not in a position to determine, offhand, questions of that character, which may be litigated for years; and, even should he do so, his judgment would certainly bind no one except the person invoking such action, and it is quite doubtful whether even he would thereby be concluded from contesting the validity of the will; this court having expressed itself on that subject as follows:

"We are not prepared to say that the mere order of the judge for the execution of a will has the effect of a judgment, binding even upon those at whose instance it was made, so far as to conclude them from subsequently contesting the validity of the will, unless, upon the probate, the question of its validity was expressly put at issue." Sophie v. Duplessis, 2 La. Ann. 726.

The order, made without citation or hearing of, or issue joined with, parties in interest, known as the "common," as contradistinguished from the "solemn" form of probate, is merely preliminary and tentative in its operation, and is made because of the necessity, which arises at the moment of death, to take immediate action for the preservation of the estate of the decedent, in order that his wishes, as expressed in his will, the validity of which is thereafter to be determined, may eventually be carried into effect. It is true that the will may be declared void in toto, as not having been made in the form or manner prescribed by law; or it may be found valid as to form, or manner of execution, and, whilst valid in so far as the appointment of an executor and the delivery of seizin are concerned, void as to all other dispositions; or, as we find in this case, it may be valid as to form and manner

of execution, as to the appointment of an executor, with seizin, and as to certain of its dispositions, and invalid, or inoperative as to others. And in such case there is no occasion and may be no desire and no attempt (and there is none here), to annul the order for the execution of the will, since all that is necessary is to invoke an interpretation of it contradictorily with the parties in interest, and have it, authoritatively and conclusively, determined whether it was thereby intended to sanction alike valid and invalid dispositions of the will, or, as must necessarily be the case with an ex parte order, was intended to operate tentatively and subject to such modification as might be determined upon after a hearing of the parties whose interests it would otherwise affect. The appellant now before the court is such a party; he has brought his suit in the court by which the order in question was made, and has caused to be cited all those whom it may affect; he asks, not that it be annulled, but that it be construed and restricted in its operation within the confines of the law; and we are of opinion that the course pursued by him is legal and proper, and that he is under no obligation to sue for the nullity of an order which he does not believe to be obnoxious to that objection.

[3] 3. Considering the argument (in support of the same exception) leveled at the averments of appellants' petition and opposition, to the effect that "the will, in the shape of a codicil, is unknown to our law," and that where as in this case it contains a "universal legacy," it (if sustained) supersedes the will, we remark (merely to keep the record straight) that the codicil here in question contains a legacy under universal title, but not a universal legacy. The learned counsel call our attention to the facts, that the Code of 1808 contained the following article:

"Art. 83. The codicil is an act less solemn than the testament, by which the testator can dispose only on a particular title and only of movable effects."

That, as the legacy by particular title was otherwise provided for in the Code of 1825, the codicil was abolished (by being omitted therefrom); and they quote as follows from the report made to the General Assembly by the redactors of the Code of 1825, to wit:

"We propose to suppress codicils; they appear to be absolutely useless and create only confusion in the subject of last wishes. Therefore all that relates to codicils will be stricken out of the Code in the projet which will be presented to the Legislature."

Either the redactors or the Legislature must have thought better of it, however, and have concluded to abolish only the codicil as defined in the Code of 1808, since the Code of 1825 contained (as article 1563), and the present Code contains, the following:

"Art. 1570 (1563). No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated. But the name given to the act of last will is of no importance, and dispositions may be made by testament under this title or under that of institution of heir, of legacy, codicil, donation mortis causa, or under any other name indicating the last will, provided that the act be clothed with the forms required for the validity of a testament, and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will."

The "codicil" is therefore embedded in our system, and, having been freed from the trammels which bound it under the definition contained in the Code of 1808, is not here different from the codicil which is known elsewhere and is thus defined, to wit:

"Codicil. A codicil is an addition or qualification to a will and is a part of the will." 40 Cyc. p. 994.

In the instant case it appears that William J. Manion, named, with his brother, as coexecutor of the original will and colegatee of the disposable portion of his father's estate had died shortly before the death of his father, and it is quite evident that the sole purpose of the codicil was to

confer upon the survivor of the two sons all that the father had intended to confer on them jointly. The original will expresses that idea, in saying, "If either should die before me, I desire that the survivor shall act" (as executor) "alone." It was apparently considered necessary however, to add the codicil in order that the survivor should succeed to the whole interest in the disposable portion of the estate, since the original will contained no provision upon that subject.

[4] 4. The clause in the original will, reading, "The extra portion that I give to my sons Martin H. Manion and William J. Manion is not intended to be in compensation for services as executors," is explicit to the effect that the bequest of the disposable portion was intended as an extra portion, and hence not to be collated. Hughes v. Hughes, 14 La. Ann. 85 et seq.; C. C. art. 1233.

[5] 5. Holding, as we have done, that this suit is properly brought, we know of no reason why the question suggested by the clause in the will expressing the desire of the testator that the estate be not divided for five years is not before the court. ·

Article 1299 of the Civil Code declares that a testator cannot order that effects given or bequeathed by him to two or more persons shall never be divided, and the following articles read:

"Art. 1300 (1223). But a donor or testator can order that the effects, given or bequeathed, by him, be not divided for a certain time, or until the happening of a certain condition. But, if the time fixed exceed five years, * * * the judge * * * may order the partition, * * * if the coheirs cannot agree," etc.

"Art. 1301 (1224). If the father * * * orders by his will that no partition shall be made among his minor children or minor grandchildren inheriting from him, during the time of their minority, this prohibition must be observed, until one of the children or grandchildren comes of age, and demands the partition."

It will be observed that articles 1299 and 1300 deal with property "given or bequeathed," not, necessarily, by a person from whom the donee or legatee would inherit, but by

any one; the purpose of the articles being to prevent the tying up of property by conditions imposed in donations and bequests. The articles have therefore no appreciable bearing upon the rights of forced heirs, with respect to the légitime which becomes theirs, by operation of law, upon the death of the persons to whom they occupy that relation. C. C. arts. 940, 945, 1493, et seq. It is true that they inherit their légitime, in the sense that it devolves upon them upon the death of the person of whom they are the forced heirs, but, unlike the rest of his estate, it devolves upon them though he may bequeath it to some one else; their paramount title is therefore derived from the law, and the bequest of the former owner is merely his acquiescence in that which the law ordains. Article 1301, on the other hand, deals with "minors, inheriting" from those of whom they are the forced heirs, but confines the permission to tie up the property so inherited to the period of minority, and is careful to add that it may be untied by the minor, child, or grandchild who first attains majority; after which there is no law, save article 1300, under which they can be kept out of any part of their inheritance; and that article, as we have seen, is confined in its application to so much of the estate of their ancestor as the law accords him the right to give or bequeath and as he may give or bequeath to them. Nor can they be compelled to hold any other property in common, since the law so expressly declares. C. C. art. 1289. We therefore, conclude that the expressed desire of the testator that his estate be not divided for five years could not, in any event, be given effect save as to the disposable portion, nor as to that, since it has been bequeathed not to two or more persons, but to one person.

[6] 6. Article 1683 of the Civil Code fixes the commission of an executor who has had seizin of all the estate of the succession at 2½ per cent. on the whole amount of the

estimate of the inventory, making a deduction for what is not productive and for what is due by insolvent debtors. Article 1687 declares that:

"In no case shall the commission allowed to the testamentary executors affect the légitime reserved to the forced heirs of the testator."

In the instant case the executor, receiving the entire disposable position, can be allowed no commission which would not affect the légitime of the forced heirs; hence no commission can be allowed.

It is therefore ordered and decreed that the judgments appealed from be affirmed in so far as they, or either of them, hold the action for partition to be premature, and dismiss it, and in so far as they, or either of them, hold that the averments that the codicil supersedes the original will, and that the legatee of the disposable portion of the estate should collate the same, disclose no cause of action; and that said judgments be reversed in so far as they, or either of them, hold that the attack upon the will should have been made in a direct action for the nullity of the order admitting the same to probate; that the averments to the effect that the clause in the will looking to the postponement of the partition for five years disclose no cause of action; and that the opposition to the allowance of the commission to the executor was not well founded. It is further ordered that the case be remanded, to be proceeded with according to law and to the views herein expressed, the costs to be paid by the mass.