FOURNET, Chief Justice.
 

 This case involves the validity of a document dated “Dec 3-61”, purporting to be the last will and testament of Mrs. Mae Viola Cooper Shows, who died leaving no ascendants or descendants, in which is written the words “All to My Sister” and signed by the decedent
 
 [1]
 
 , and is now before us on a writ of certiorari granted on the application of the proponent, Mrs. Daisy Cooper Granier, the sole surviving sister of Mrs. Shows, to review the judgment of the Court of Appeal, First Circuit, affirming the judgment of the district court, maintaining the opposition of nephews and nieces
 
 [2]
 
 , the children of three predeceased sisters and one brother, to the probate of the purported will. See, 158 So.2d 293.
 

 The undisputed facts reveal that the document offered for probate was entirely written, dated and signed in the handwriting of the decedent on December 3, 1961, the same day she went to Foundation Hospital where she was to be hospitalized for a serious physical condition; upon her arrival there, she gave an envelope to Mrs. Granier, who placed it in her purse in obedience to the instruction “to take good care of it.”
 

 
 *655
 
 The envelope was opened a day or two after the death of Mrs. Shows, which occurred on December 18, 1961, in which the document offered for probate was found attached to a bundle of papers therein with a rubber band. The papers included certified copies of deeds to property, copies of the proceedings in the succession of Mrs. Shows’ late husband, and various bills and receipts, as well as a savings account book showing a balance of $10,000.
 

 The law applicable in the instant case is contained in Chapter 6, Title II, Book III of the Revised Civil Code, entitled “Of Dispositions Mortis Causa (in Prospect of Death)”
 
 [3]
 
 , where it is expressly provided that “No disposition mortis causa shall henceforth be made otherwise than by last will or testament.” Art. 1570. A testament is defined to be “ * * * the act of last will clothed with certain solemnities, by which the testator disposes of his property, either universally or by universal title, or by particular title,” Art. 1571 and may be either (1) nuncupative, (2) mystic, or (3) olographic in form. Art. 1574. In any class the testament must be drawn in writing. Arts. 1575, 1588. “The custom of making verbal testaments, that is to say, resulting from the mere deposition of witnesses, who were present when the testator made known to them his will, without his having committed it or caused it to be committed to writing, is abrogated.” Art. 1576. In fact, Art. 1570 specifically declares “Every other form is abrogated,” and contains the further provisions:
 

 “ * * * the name given to the act of last will is of no importance, and
 
 dispositions may be made by testament
 
 under this title or under that of institution of heir, of legacy, codicil, donation mortis causa, or
 
 under any
 
 other
 
 name indicating the last will, provided that the act be clothed zvith the forms required for the validity of a testament,
 
 and
 
 the clauses it contains,
 
 or
 
 the manner in which it is made, clearly establish that it is a disposition of last will.
 

 “Thus an act of last will, by which an individual disposes of his property or of part thereof, in any manner whatsoever, * * * is considered as a testament,
 
 if
 
 it be, in other respects, clothed with the formalities required by law.” (Emphasis added)
 

 A mere perusal of the instrument sought to be probated in the case at bar discloses it totally lacks any language to indicate the animus testandi of the decedent and the necessary words to constitute a valid
 
 *657
 
 will. Theall v. Theall,
 
 7
 
 La. 226; Oxley v. Clay,
 
 7
 
 Rob. 425; Succession of Foucher, 18 La.Ann. 409; Succession of Elliot, 27 La.Ann. 42; Succession of Rusha, 158 La. 74, 103 So. 515; Succession of Maginnis, 158 La. 815, 104 So. 726; Succession of Patterson, 188 La. 635, 177 So. 692; Succession of Bechtel, La.App., 99 So.2d 495; Succession of Brewster, La.App., 145 So.2d 597; Succession of Faggard, La.App., 152 So.2d 627. Furthermore, the instrument is void of any language connoting dispositions testamentary of the decedent’s property.
 

 The law, and the jurisprudence interpretative thereof, upon which the proponent relies to support her assertion that it was the intention of the decedent that the instrument was her last will and testament and that it could be so ascertained by resorting to extrinsic evidence in the record, is based on Art. 1712 et seq. of the Revised Civil Code, under the heading “GENERAL RULES FOR THE INTERPRETATION OF LEGACIES”, is inapplicable. In order for one to dispose of his property mortis causa by giving a portion thereof in the form of a legacy, he may do so only in the manner and form prescribed by law, i. e., under a valid will.
 

 For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is reinstated and made the final judgment of this court.
 

 [1]
 

 . Immediately underneath the statement “All to My Sister:, the signature of Mrs. Shows appears in this manner:
 

 “Mrs. Mae V. C. Shows “Mrs. Mae V. C. Shows “Shows”
 

 [2]
 

 . These collateral heirs are: , Melville Worley, Wesley Worley, Mrs. Eleanor Worley Hoffpauir, Mrs. Ismae Worley Burns, Jared Y. Heintz, Mrs. Alma Heintz Gilbert, Mrs. Clara Heintz For-tier, Otis Heintz, Burt Heintz, Harold Duncan Cooper, Conley Howard Cooper, Mrs. Marion Cooper Mason, and Mrs. Audrey Smith Jackson, decedent’s great niece.
 

 [3]
 

 . Art. 1469, R.C.C., defines a donation mortis causa (in prospect of death) as “an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is-revocable.”-