CRAIN, J.
lain this succession proceeding, the executrix appeals a judgment denying and dismissing a petition to probate an alleged olographic codicil to the decedent’s last will and testament. We affirm-.
FACTS
Edward A. Cannon, Jr. (Edward) died testate on June 29, 2012. He was survived by his spouse and four children from a prior marriage, namely Edward A. Cannon, III, Wayne A. Cannon, Deanna L. Cannon, and Brenda A. Cannon (Brenda). Edward executed a statutory will on November 20, 1981, that bequeathed all of his property to his four children, in equal parts, through a testamentary trust and appointed Brenda to serve as executrix of his estate. Shortly after her father’s death, Brenda commenced this succession proceeding and obtained an order probating the 1981 statutory will and appointing her as executrix of Edward’s estate. The principal assets in the succession are the shares of EACCO, Inc., a privately held business that was wholly owned by Edward, and a building that housed EACCO’s operations. The control of EACCO after Edward’s death has caused considerable discord between Brenda and her siblings during the administration of the succession.
Approximately 13 months after probating the 1981 statutory will, Brenda filed a petition seeking to probate an alleged olo-graphic codicil that consists of the following two pages (sometimes referred to hereinafter as the “1998 document”):
JLl
*1100 [[Image here]]
|4Brenda submitted affidavits from two individuals who attested that they were familiar with Edward’s handwriting and that the writing on the document is entirely Edward’s handwriting. According to Brenda, the 1998 document is an olograph *1101 ic codicil that amends the 1981 statutory will and, among other changes, bequeaths full ownership of EACCO to her. Brenda’s siblings objected and asserted that the document, which they characterized as a set of notes written by their father in an attempt to organize his thoughts, did not comply with the requirements for an olo-graphic codicil, because it was not signed at the end and did not reflect testamentary intent.
At the conclusion of a contradictory hearing on the matter, the trial court agreed with the siblings and denied the request to probate the document. The trial court signed a judgment on September 17, 2013, denying and dismissing the petition to probate the alleged codicil, and Brenda appealed.[1]
DISCUSSION
Brenda assigns as error the trial court’s failure to probate the 1998 document, specifically asserting that the trial court erred in finding a lack of both |sform and testamentary intent. Brenda also asserts that the trial court erred in refusing to allow her to present evidence in support of her petition to probate.
A codicil is an addition or qualification to a will and is considered part of the will. See Succession of Ledet, 170 La. 449, 452, 128 So. 278, 274 (1930); Succession of Manion, 143 La. 799, 808, 79 So. 409, 412 (1918); Succession of Hinds, 06-846 (La.App.,3 Cir. 2/28/07), 952 So.2d 842, 846. To be valid, a codicil must be made in one of the forms prescribed for a valid testament and clothed with the same formalities. See La. Civ.Code arts. 1570, 1610; Succession of Mydland, 94-0501 (La.App. 1 Cir. 3/3/95), 653 So.2d 8, 12 n. 3. There are two forms of testaments: olo-graphic and notarial. La. Civ, Code art. 1574. An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. See La. Civ. Code art. 1575; In re Succession of Aycock, 02-0701 (La.5/24/02), 819 So.2d 290 (per curiam).
In addition to the form requirements, an olographic testament must contain testamentary intent, which is to say, *1102 “it must, by its own language, show on its face that it purports to dispose of the property of the testator on his death.” In re Succession of White, 06-1002 (La.App. 1 Cir. 5/4/07), 961 So.2d 439, 441 (quoting Succession of Shows, 158 So.2d 293, 295 (La.App. 1 Cir.1963), affirmed, 246 La. 652, 166 So.2d 261 (1964)). A valid olo-graphic testament must do more than express or expláin the wishes or desires of a decedent; the document must show intent to convey the decedent’s property by the instrument itself. In re Succession of Carroll, 09-219 (La.App. 5 Cir. 12/8/09), 30 So.3d 11, 17-18. A paper is not established as a person’s will merely by proving that he intended to make a disposition of his property similar to or even identically the same as that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. Succession of Patterson, 188 La. 635, 641-42, 177 So. 692, 694 (1937); In re Successions of Lain, 49,261 (La.App. 2 Cir. 8/20/14), 147 So.3d 1204, 1209-10. Simply stated, not every instrument that one writes, signs, and dates is a last will and testament; the author must; intend for the instrument to serve that purpose, and that intent must be evident on the face of the document.
We first consider Brenda’s assertion that the trial court erred in refusing to allow certain evidence in support, of the petition to probate the 1998 document. Specifically, Brenda attempted to introduce an audio recording that, according to Brenda, was made in 2011 while Edward was a hospital patient. Brenda evidently made the recording surreptitiously, as there is no indication that Edward was aware that his communications with his healthcare providers and Brenda were being recorded. Most of the recording consists of exchanges between Edward and his healthcare providers, but at some point, Edward apparently tells an attending healthcare provider, with Brenda still present in the room, “My daughter has been with [inaudible] for 12 years, and I’ve already put her in my will. She gets the business, not her siblings, when I die.” Brenda also proffered her affidavit attesting that her father told her numerous times that he put arrangements in place to pass ownership of his, EACCO shares to her upon his death. One of those occasions, according to the affidavit, was at a family meeting attended by several other family members. Brenda also offered an affidavit from Edward’s widow, Marjorie Cannon, who attested that Edward told her on numerous occasions, and told others in her presence, that he had put estate planning arrangements in place to pass ownership of EACCO to Brenda upon his death. The siblings objected to these items as irrelevant, hearsay, and improper parol evidence of a testament or purported codicil. The trial court sustained the objections.
The standard of review for a trial court’s evidentiary rulings is abuse of discretion; the trial court’s ruling will not be disturbed unless it is clearly erroneous. Gorman v. Miller, 12-0412 (La.App. 1 Cir. 11/13/13), 136 So.3d 834, 840 (en banc), writ denied, 13-2909 (La.3/21/14), 135 So.3d 620. Extrinsic or |7parol evidence cannot be used to establish testamentary intent. See Succession of Shows, 246 La. 652, 657, 166 So.2d 261, 263 (1964); Successions of Lain, 147 So.3d at 1210; In re Succession ofBemstine, 04-739 (La.App. 3 Cir. 12/22/04), 890 So.2d 776, 779, writ denied, 05-0182 (La.4/22/05), 899 So.2d 555; Succession of Carroll, 30 So.3d at 17. To be a valid testament, the instrument “must, by its own language, show on its face that it purports to dispose of the property of the testator on his death.” Succession of White, 961 So.2d at 441 (em *1103 phasis added; quoting Succession of Shows, 158 So.2d at 295).[2]
Brenda argues that extrinsic evidence is admissible to prove that a decedent revoked a legacy or will, and, therefore, such evidence should be admissible to prove that a testator intended to modify his will. Brenda cites Succession of Justice, 28,368 (La.App. 2 Cir. 8/28/96), 679 So.2d 597, 600, which addressed whether a testator destroyed the original of a testament that could not be found, and Succession of Dauzat, 212 So.2d 523, 526 (La.App. 3 Cir.1968), wherein the court held that a will dictated by the testator to the notary in French was invalid because it was written and read back to the testator in English, which the testator did not understand. Succession of Dauzat addressed the testator’s capacity to understand the document that purported to be her testament, and the holding has no application to the present proceeding.
Succession of Justice involved the presumption that a testament was revoked by the destruction of the instrument, a presumption that arises when the original testament cannot be located after the testator’s death. See La. Civ.Code art. 1607; Succession of Talbot, 530 So.2d 1132, 1134-35 (La.1988). Under those circumstances, the presumption may be supported or rebutted by evidence of | ^whether the testator was the author of the will’s destruction, whether he expressed an intention to revoke the will, whether he had access to other originals of the will prior to his death, whether he treated any extant copy of the will as not having been revoked, and as to any other issue bearing upon the testator’s intention with respect to the destruction and revocation of the will. See Succession of Talbot, 530 So.2d at 1135. Because the original will cannot be located in those instances, extrinsic evidence of the testator’s intent is relevant and necessary to determine whether he destroyed the testament and thereby revoked it. However, such evidence is not necessary when the original instrument has been located and presented to the court for probate, as was done in the present case. Under these circumstances, a court looks no further than the face of the document to determine whether testamentary intent was present when it was executed. See Succession of Shows, 246 La. at 657, 166 So.2d at 263; Succession of White, 961 So.2d at 441; Successions of Lain, 147 So.3d at 1210; Succession of Bernstine, 890 So.2d at 779; Succession of Carroll, 30 So.3d at 17. The trial court correctly refused to allow the proffered evidence. This assignment of error has no merit.
Brenda next contends that testamentary intent is not necessary for a valid codicil and that the 1998 document satisfies the form requirements for an olographic will because it was written, signed, and dated in Edward’s handwriting. Alternatively, she maintains that testamentary intent, if required, is established on the face of the document. The siblings counter that while the document was written and dated by Edward, it was not properly signed, because Edward’s name, if intended to be a signature, appears at the very top of the instrument rather than at | athe end.[3] The *1104 siblings further contend that the document lacks testamentary intent, because it does not show an “intent to convey decedent’s property by the instrument itself.” Finding merit in this second argument, we address that basis for the trial court’s judgment "and pretermit consideration of whether Edward’s signature at the top of the document satisfies the form requirements for an olographic will under Louisiana Civil Code article 1575.[4]
Brenda initially argues that testamentary intent is not required for a valid codicil to a will. The modification of a testament by a codicil is governed by Louisiana Civil Code article 1610, which requires that the modification be in “one of the forms prescribed for testaments.” Similarly, Louisiana Civil Code article 1608 provides that a legacy is revoked when the testator “[s]o declares in one of the forms prescribed for testaments” or “[m]akes a subsequent incompatible testamentary disposition or provision.” Brenda contends that this codal language only requires proper testamentary “form” for a valid codicil and does not require testamentary intent.
110The references to “form” in Articles 1610 and 1608 are not materially different from similar references in Article 1575, which governs the form for an olographic testament, and Articles 1576 and 1577, which govern the form for a notarial testament. While all of these articles address “form” requirements, those requirements expressly apply to the creation or modification of a “testament,” meaning an instrument that is intended by its author to dispose of his property by a mortis causa disposition upon his death. See La. Civ. Code art. 1570; Succession of Patterson, 188 La. at 641-42, 177 So. at 694; Succession of White, 961 So.2d at 441. Our courts have consistently held that a valid testament requires testamentary intent, and we see no basis to require anything less for the modification of a valid testament by a codicil. See Succession of Carroll, 30 So.3d at 17-18 (document that lacked testamentary intent was not a valid codicil). Brenda’s argument to the contrary is without merit.
Brenda alternatively asserts that the 1998 document adequately reflects testamentary intent. The document must be read as a whole to determine whether the *1105 necessary testamentary intent was present when it was executed. See In re Succession of White, 961 So.2d at 442. Although the caption of the 1998 document — “Will (change from existing)” — is suggestive of testamentary intent, the body of the document repeatedly reflects Edward’s uncertainty and indecision as to how his estate should be divided and managed.
The first lettered paragraph identifies a building followed by a list of six people, identified only by first name, with corresponding percentages for each person that cumulatively total 180%. A provision indicating a possible distribution of percentage to Edward’s “grand children” has been struck through, and the phrase “% of revenue” appears in the margin. The uncertainty concerning the disposition of this building is compounded by the last lettered paragraph in which Edward questions whether he should sell the building to EACCO to “create cash.” InAt the end of the document, he inquires, “Can I sell the Bldg, to EACCO? What are the problems w/this?”
The next paragraph identifies the-“Home in Folsom” and contains some redacted text that referred to the previous paragraph. A note in the margin provides “4-7-99 Sell,” indicating an apparent conveyance of the house, which does not appear as an asset of the succession in the detailed descriptive list filed in the record.
The next paragraph addresses EACCO and is the focal point of Brenda’s appeal, as she asserts that this paragraph bequeaths all of the company’s shares to her. While that paragraph does include the notation “100% to Brenda,” the same paragraph also identifies the three remaining children with “? %” preceding each name, as well as a reference to “current employees” that has been struck through. The presence of multiple question marks in this paragraph undermines Brenda’s assertion that the provision was intended by Edward to be a final, complete codicil to his will. To the contrary, it demonstrates a continuing uncertainty about the distribution of the company and any modification to the will in that regard. The remaining information in the document includes references to life insurance and social security benefits, followed by a series of questions that further illustrate the unresolved nature of Edward’s estate planning.
Further adding to the uncertainty of the document is the lack of a signature after any of the purportedly dispositive provisions. While we express no opinion as to whether a signature at the top of the document satisfies the form requirement for an olographic will, the location of the signature may nevertheless be relevant for ascertaining testamentary intent. The purpose in requiring the testator to sign his testamentary dispositions is to make certain that they constitute his last will. Succession of Fitzhugh, 170 La. 122, 126, 127 So. 386, 387 (1930). Where, as in the present case, the document reflects uncertainty concerning the purported 112bequests, the absence of any signature after those provisions further suggests a lack of testamentary intent. In Succession of Fitzhugh, a party attempted to probate an alleged olographic will, although the testator’s signature appeared only on the envelope containing the document. In affirming the trial court’s refusal to- probate the document, the supreme court stated:
[I]t is not beyond the bounds of reason that the testatrix, after writing down the testamentary dispositions and dating them, was undecided as to whether to complete the dispositions by affixing her signature at the end of them, and therefore placed them in an envelope, sealed the envelope for security, and placed the superscription thereon for her own con *1106 venience, so as to identify the envelope readily, intending, if she later concluded that the dispositions met with her wishes, to do the ordinary, usual, and naturally suggestive act of signing them at their close, so as to show what was written above was her last will, just as she would in completing any other solemn document.
Succession of Fitzhugh, 170 La. at 127, 127 So. at 387. Similarly, in the present case, the absence of a signature after the allegedly dispositive provisions suggests that Edward may have been “undecided as to whether to complete the dispositions by affixing [his] signature at the end of them.” See Succession of Fitzhugh, 170 La. at 127, 127 So. at 387.
In arguing that the document does reflect testamentary intent, Brenda relies primarily on Succession of White, but the document before the court in that case differs significantly from the 1998 document. In Succession of White, the three-page document contained a list of assets followed by the testator’s specific wishes for the distribution of her property to several legatees. The testator signed and dated the instrument at the top of the first page and at the bottom of the third page. Nothing on the face of the instrument suggested that it was incomplete or that the testator was undecided about the distributions. In an attempt to invalidate the will, the intestate heirs argued that testamentary intent was lacking because of a notation on the reverse side of the third page, which stated “Listing assets — Temporary only in case of emergency” and noted that “[v]ery little” was in an identified bank box. 11sThe court reasoned that this notation, which was not contained within the dated and signed pages, could reasonably be interpreted as a note to the decedent’s family directing them to look for a “temporary” listing of assets in her bank box, or as a note to herself to update her list of assets if her savings were substantially depleted by medical costs. Succession of White, 961 So.2d at 443. Therefore, the court found that the trial court did not err in finding that the document was a valid last will and testament. Succession of White, 961 So.2d at 443.
In contrast to the definitive nature of the document presented to the court in Succession of White, the 1998 document, through numerous question marks and unanswered questions, demonstrates Edward’s uncertainty as to how his estate should be distributed. We also note that the court in Succession of White relied on the premise that “[g]iven multiple interpretations of writings, a court must opt for the one that grants testacy and turns away intestacy.” Succession of White, 961 So.2d at 443. In the present case, we are not confronted with an estate that will be subject to intestacy if the codicil is not probated. Nor are we attempting to construe an ambiguous legacy or other provision in a valid testament, in which case every endeavor should be made to give effect to the disposition, and the law is indulgent if the testament is written without aid of counsel. See La. Civ.Code art. 1612; Carter v. Succession of Carter, 332 So.2d 439, 442 (La.1976). To the contrary, Brenda is seeking to modify the terms of a valid statutory will that, without contest, was probated in this proceeding and contains an unambiguous declaration by Edward of how his estate should be distributed upon his death. That unequivocal expression of intent should not be lightly disregarded or modified without sufficient proof that Edward subsequently executed a valid codicil to change his will.
Considering the entirety of the 1998 document, we do not find that Edward intended this very instrument, which contains more questions than purported 114bequests, *1107 to be a final codicil to his will. Although Edward may have been contemplating a modification of his will, the 1998 document, at best, is a work-in-progress that Edward never completed prior to his death. Accordingly, the trial court did not err in denying and dismissing the petition to probate the alleged olographic codicil, and these assignments of error have no merit. See In re Succession of Rhodes, 39,364 (La.App. 2 Cir. 3/23/05), 899 So.2d 658, 662, writs denied, 05-0936, 05-1044 (La.6/3/05), 903 So.2d 459, 460 (letter instructing attorney as to how individual wished his estate to be distributed and requesting cancellation of prior wills lacked sufficient testamentary intent to establish that he intended to dispose of his property by means of that particular instrument); Succession of Carroll, 30 So.3d at 17-18 (document setting forth inventory of assets and desired bequests that was given to an attorney was never finalized and lacked testamentary intent).
CONCLUSION
The trial court’s September 17, 2013 judgment, as amended by the February 6, 2015 judgment, is affirmed. All costs of this appeal are assessed to Brenda A. Cannon, individually and as executrix of the Succession of Edward A. Cannon, Jr.
MOTION TO DISMISS APPEAL DENIED; SEPTEMBER 17, 2013 JUDGMENT, AS AMENDED BY THE FEBRUARY 6, 2015 JUDGMENT, AFFIRMED.

. The siblings filed a motion to dismiss the appeal filed by Brenda in her capacity as executrix, arguing that the appeal is "for her own individual self-interest.” In their appellate brief, the siblings appellees also asserted that this court lacked jurisdiction because the September 17, 2013 judgment was a partial judgment that was not immediately appeal-able. Thereafter, this court remanded this matter to the trial court for consideration of whether the judgment warranted designation as a final, appealable judgment pursuant to Louisiana Code of Civil Procedure article 1915 B(2). In response, the trial court signed an amended judgment on February 6, 2015, that certified the September 17, 2013 judgment as a final judgment and made an express determination that there was no just reason for delay. The trial court issued a per curiam providing express reasons for its determination based upon the factors set forth in R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La.3/2/05), 894 So.2d 1113, 1122-23. After review of those reasons, we find no abuse of discretion in the trial court’s designation of the September 17, 2013 judgment as final for purposes of immediate appeal. We further find that Brenda, in her capacity as executrix, has the right to appeal the judgment refusing to probate the alleged olographic codicil. See La.Code Civ. Pro. arts.2084, 3196; see also Succession of Vatter, 191 La. 875, 879, 186 So. 597, 598 (1939); Succession of Schiro, 96-1567 (La.App. 4 Cir. 4/9/97), 691 So.2d 1374, 1376, writs denied, 97-1400, 97-1423 (La.9/5/97), 700 So.2d 518 (both holding that an executor may appeal a judgment interpreting a will). For these reasons, we deny the siblings' motion to dismiss this appeal. We also deny the siblings’ request for this court to issue a ruling concerning the succession's responsibility for the attorney fees incurred by Brenda for this appeal. A request for authority to pay those attorney fees from the estate has not been presented to the trial court and, therefore, is not properly before this court.

. We note that the bar against parol evidence to establish "testamentary intent” in this context, meaning the testator’s intent that the document actually serve as his testament, is distinguishable from the rule permitting "any competent evidence” to clarify a testator’s intent with respect to a particular disposition or other provision in a valid testament. See La. Civ.Code art. 1611; Succession of Shows, 246 La. at 657, 166 So.2d at 263.

. Because the entire document is written in script, the siblings contend there is "no way to tell if the 'signature' at the top was a *1104 signature or just the Decedent writing his name.” This argument has some support in the jurisprudence. See In re Poland’s Estate, 137 La. 219, 221, 68 So. 415, 416 (1915) ("An essential form for [an olographic will] is that it be signed by the testator; and the mere writing of the name of the testator as part of, or in connection with, the instrument, but at some other place than where a signature usually is and ought to be, is not in form a signature, and therefore does not satisfy the sacramental requirement of the law. It leaves open the question whether the name thus written was intended to be the signature.”) Because we affirm the trial court’s ruling based on a lack of testamentary intent, we pretermit consideration of whether Edward’s name, as written, constitutes a signature; however, for ease of reference, we will refer to the name as his "signature.”

. Article 1575 provides:
A. An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. Although the date may appear anywhere in the testament, the testator must sign the testament at the end of the testament. If anything is written by the testator after his signature, the testament shall not be invalid and such writing may be considered by the court, in its discretion, as part of the testament. The olographic testament is subject to no other requirement as to form. The date is sufficiently indicated if the day, month, and year are reasonably ascertainable from information in the testament, as clarified by extrinsic evidence, if necessary.
B. Additions and deletions on the testament may be given effect only if made by the hand of the testator.