GUIDRY, J.
pin this succession proceeding, Gladys Achee, appeals from a trial court judgment dismissing her petition to annul her deceased husband’s probated testament. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Lawrence Acheé, ( Jr. (decedent) was married to Gladys Acheé on August 1, 1987. Decedent and Gladys separated in 2009 and lived separate and apart until the decedent’s death on November 3, 2014. At the time of his. death, decedent had no children and was survived by his estranged wife, Gladys.
Thereafter, decedent’s nephew, Truitt Dain Miller (Truitt), filed a petition, for probate of olographic testament and for confirmation of executor on July 28, 2015. In conjunction therewith, Truitt filed a testament written in the decedent’s handwriting as well as a typed testament. Both testaments were executed by the decedent on September 4, 2013; however, the typed testament was not signed by a notary until Séptember 28, 2013. Because the typed testament was presumptively invalid, Truitt only requested that the handwritten testament be probated by the court.' In addition to the testaments, Truitt also filed affidavits for probate of the olographic testament executed by himself, Marie Antoinette Achee Miller, and Jon Marie Acheé Souquet; and an agreement to independent administration of succession—Designation of Truitt to serve as dative independent executor and verification.
On July 30, 2015, the trial court signed an order, finding that the handwritten testament was a valid olographic testament, drawn.in accordance with La. C.C. art. 1575, and in accordance with La. C.C.P. arts. 2883 and 2890, it need not be further proved. The court also ordered that the olographic testament be filed,-.admitted to probate, and executed according to law and further ordered that Truitt be confirmed as dative independent executor.
| ¡/Thereafter, on October 15, 2015, Don Lewis Achee, decedent’s brother, and Gladys .filed a petition to annul the probated testament, naming Truitt, Marie and Jon as defendants.[1] The petition asserted that the purported olographic testament did not qualify as a testament because it did not contain any language that could be interpreted as a bequest to any party and therefore should be annulled. The petition also asserted that the typed instrument was not in valid form because the notary signed the instrument twenty-four days after the decedent signed it and therefore, it also should be annulled.
■ Following a hearing on the petition to annul, the trial court signed a judgment denying the motion to annul the olographic testament. Gladys now appeals from the trial court’s judgment;
DISCUSSION
There are two forms of testaments: olographic and notarial. La. C.C. art. 1574. An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. La. C.C. art. 1575.
In addition to the form requirements, an olographic testament must contain testamentary intent, which is to say, it *8 must, by its own language, show on its face that it. purports to dispose of the property of the testator on his death. In re Succession of Cannon, 14-0059, p. 5 (La. App. 1st Cir. 3/25/15), 166 So.3d 1097, 1101-1102, writ denied, 15-0816 (La. 6/5/15), 171 So.3d 948; see also Succession of Shows, 158 So.2d 293, 295 (La. App. 1st Cir. 1963), aff'd, 246 La. 652, 166 So.2d 261 (1964). A valid olographic testament must do .more than express or explain the wishes or. desires of. a decedent; the document must show intent to convey the decedent’s property by the instrument itself. In re Succession of Cannon, 14-0059 at p. 5, 166 So.3d at 1102. A paper is not established as a Uperson’s will merely by proving that he intended to make a disposition of his property similar to or even identically the same as that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. In re Succession of Cannon, 14-0059 at p. 5, 166 So.3d at 1102. Simply stated, not every instrument one writes, signs, and dates is á last will and testament; the author must intend for. the instrument to serve that purpose, and that -intent must be evident on the face of the document. In re Succession of Cannon, 14-0059 at p. 6, 166 So.3d at 1102. Extrinsic or parol evidence cannot be used to establish testamentary intent, In re Successions of Lain, 49,261, p. 9 (La. App. 2nd Cir. 8/20/14), 147 So.3d 1204, 1210.
The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of the law. La. C.C.P. art. 2932(A); see also Succession of Wadsworth, 152 La. 131, 92 So. 760 (1922). In reviewing a trial court’s factual findings when ruling on a petition to annul a testament, an appellate court applies the manifest error standard of review. See In re Succession of Theriot, 08-1233, p. 5 (La. App. 1st Cir. 12/23/08), 4 So.3d 878, 882.
In the instant case, because Gladys filed her petition to annul the probated olo-graphic testament within three months of the date that the testament was probated, Truitt bore the burden of establishing the ■ authenticity of the testament and its compliance with all of the formal requirements of law. The parties do not dispute that the handwritten document at issue complies with the statutory requirements for an olographic testament, namely that it is entirely written, dated, and signed in the handwriting of the testator. See La. C.C. art. 1575. As such, the tissue before the trial court was whether the document, on its face, evidences testamentary intent.
The handwritten document at issue provides:
Sept /4/13
to whom it may concern about the estates of Lawrence David Acheé, Sr, & Vergie ola Martin Acheé
I want to leave whatever is passed on to Lawrence David Acheé Jr. to truitt Dain Miller
I want to leave ¿11 of my firearms to ■ truitt Dain Miller
I want to leave all of my. knife collection to truitt Dain Miller
I want to leave all Chevrolet, ford, and international trucks to truitt Dain Miller
I want to leave all tools, welders, torches, grinders, weedeaters, chain saws, circular saws
Lawrence D Acheé Jr.
(Larry D. Acheé)
Gladys asserts on appeal that the trial court erred' in finding that the decedent intended for. the handwritten document to be his last will and testament *9 because it contains precatory language, does not show testamentary intent, and does not show that it is the instrument the decedent intended to be his last will and testament,[2]
 | ^Gladys -asserts that the use of “I want to leave” in the.handwritten.document is not dispositive but is precatory. Precatory expressions are words requesting or praying that a thing be done. Succession of Diaz, 617 So.2d 34, 36 (La. App. 4th Cir. 1993). The law is clear that a testator’s mere wishes and requests are viewed as precatory suggestions, which are not binding in law. Succession of Diaz, 617 So.2d at 36. However, the determination of testamentary intent does not'rest solely on the testator’s choice to use the words “would like,” “want to,” or “wish.” See In re Succession of White, 06-1002, p. 5 (La. App. 1st Cir. 5/4/07), 961 So.2d 439, 442. There is no fixed rule that the use of particular words should be interpreted as precatory suggestions rather than as dispositions of property. See In re Succession of White, 06-1002 at p. 5, 961 So.2d at 442; Succession of Diaz, 617 So.2d at 36. Rather, the entire document must be read as a whole to determine whether the expression was, intended to be merely precatory or was intended by the testator to actually dispose of the property. See In re Succession of White, 06-1002 at p. 5, 961 So.2d at 442. Succession of Diaz, 617 So.2d at 36.
The handwritten document detailed above contains five separate sentences detailing assets or property of the decedent and how the assets or property are,to be disposed.[3] Although the decedent did not use, legal terms such as “bequest”- or “bequeath,” or- otherwise .state that the document, was a..will or testament, the language of . the document, when read as. a whole, demonstrates more than mere wishes, requests, or hopes. See In re Succession of White, 06-1002 at p. 6, 961 So.2d at 442. Furthermore, there is no indication *10 in the language of the handwritten document that the decedent intended it to be a mere listing of assets or notes to be used by an attorney in drafting a will, see e.g. In re Succession of Rhodes, 39,364, 7pp. 4-7 (La. App. 2nd Cir. 3/23/05), 899 So.2d 658, 660-662, writs denied, 05-0936, 05-1044 (La. 6/3/05), 903 So.2d 459, 460 and Hendry v. Succession of Helms, 557 So.2d 427, 429 (La. App. 3rd Cir.), writ denied, 560 So.2d 8 (La. 1990); that it was a direction or request to a third party with discretion, see e.g. In re Succession of Plummer, 37,243, pp. 10-12 (La. App. 2nd Cir. 5/14/03), 847 So.2d 185, 190-191, writ denied, 03-1751 (La. 10/10/03), 855 So.2d 323 and Succession of Diaz, 617 So.2d at 35; or that it contained vague instructions, see e.g. In re Succession of Bernstine, 04-739, p. 6 (La. App. 3rd Cir. 12/22/04), 890 So.2d 776, 780. Rather, contrary to Gladys’ assertion on appeal, a plain and unstrained reading of the handwritten document demonstrates that the’ decedent’s use of the phrase “I want to leave” indicates his intent to dispose of his assets and property upon his death.
Furthermore, the fact, that a typewritten document was. executed later the same day as the handwritten document, and that the typewritten document was subsequently notarized weeks after its execution is irrelevant to the determination of the intent of the testator at the time he executed the handwritten document. See In re Succession of Rhodes, 39,364 at p. 3, 899 So.2d at 660 (noting that intent must exist when the instrument is executed). As previously stated, testamentary intent must be found from the document itself, and nothing on the face of the handwritten document supports the inference that the decedent contemporaneously with its execution intended to make' a more formal will. See Hendry, 557 So.2d 427, 430 (Yelverton, J., dissenting).
Finally, we find no merit in Gladys’ assertion that the handwritten document had clearly been altered, and that Truitt failed to establish what had been removed from the bottom of the handwritten document. As the proponent of the testament, Truitt was only required to establish that the handwritten document was entirely written, dated, and signed in the handwriting of the testator. La. C.C. art. 1575. |,sThe handwritten document submitted by Truitt undisputedly meets the statutory criteria for a valid olographic testament. Furthermore, Truitt submitted the affidavits of two witnesses as required by La. C.C.P. art. 2883, wherein one of the witnesses, Marie, stated that she reviewed the document beginning “To whom it may concern about the estate...” and ending with “I want to leave all tools, welders, torches, grinders weedeaters, chain saw, circular saws[.] Lawrence D. Acheé (Larry D. Acheé)” and was present and personally saw decedent write the document with his own hand. The content described in the affidavit is the same as that submitted to the court. Accordingly, while Gladys asserts that the document was altered and something unknown was written below the decedent’s signature, there is no evidence to refute the evidence offered by Truitt as to .the document’s completeness and authenticity.
Therefore, after a thorough review of the record, we find no manifest error in the trial court’s finding that the handwritten document evidences the intent of the decedent and as such, is a valid olographic testament.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court denying Gladys Achee’s motion to annul the probated tes *11 tament. All costs of this appeal are assessed to Gladys Achee.
AFFIRMED.
McDonald, J. concurs and assigns reasons.
Whipple, C.J. dissents for the reasons assigned by J, McClendon
McClendon, J dissents and assigns reasons.
Holdridge J. concurs for the reasons assigned by J. McDonald.

. Marie and Jon did not file the petition for probate and are not named as legatees in the olographic testament.

. Gladys also asserts that the trial court erred by requesting and relying upon the testimony of a witness to determine whether the decedent intended for the handwritten document to be his last will and testament. However, we find Gladys' assignment of error in this regard to be without merit'for several reasons. First, Gladys failed to object to the introduction of the witness’s testimony at the hearing, and as such, may not complain of the inadmissibility of the evidence on appeal. See Succession of Davisson, 50,830, p. 8 (La. App. 2nd Cir. 12/22/16), 211 So.3d 597, 604, writ denied, 17-0307 (La. 4/7/17), 218 So.3d 111. Additionally, the record makes clear that the trial court, requested witness testimony for the limited purpose of "making the record clear” as to the timing of the execution of the typewritten document, which Was executed the same date as the handwritten document. The witness, although acknowledging when asked by counsel that she was present when the "handwritten ..will” was prepared by decedent, offered no testimony regarding the execution of the handwritten document and limited her testimony to the circumstances surrounding the execution of the typewritten document. Furthermore, contrary to ' Gladys' assertion on appeal, the trial court's oral ruling clearly states that "the olographic will, although it might not say everything that we would want it to say, I think it certainly exhibits-'the intent of the testator,” indicating that -the trial court properly made, its determination based on the language of the testament. Accordingly, we find no merit to Gladys’ argument that' the trial court erred in requesting witness testimony or that the trial court impermissibly relied on witness testimony, in making its factual determination regarding testamentary intent.

. We note that the fifth sentence details property and that the decedent wants to dispose of . that property, but the legatee is not mentioned in the sentence. While this may result in an ambiguity in the testament as to this particular disposition, for which competent evidence may be submitted to resolve any ambiguity, it does not conclusively defeat-testamentary intent as to the,document as a .whole. See La. C.C. art. 161,1 (intent of the testator controls interpretation of testament).